David **PROCTOR**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21569.**

United States Court of Appeals
District of Columbia Circuit.

Argued Aug. 8, 1968.

Decided Oct. 10, 1968.

Petition for Rehearing Denied
Jan. 8, 1969.

Mr. Peyton Graham Bowman, III, Washington, D. C., with whom Mr. Richard M. Merriman, Washington, D. C. (both appointed by this court), was on the brief, for appellant.

Mr. Daniel Givelber, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Arthur L. Burnett and Miss Carol Garfiel, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and TAMM, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

Appellant was convicted on three counts of robbery and sentenced to imprisonment for from two to six years on each count, sentences to be served concurrently. On appeal we consider, first, whether testimony as to a statement Proctor made at the police station was admissible under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and second whether an in-court identification was proper under Stovall v. Denno, 388 U.S. 293, 87 S.Ct.1967, 18 L.Ed.2d 1199 (1967). We conclude that further facts are necessary before either point can be decided, and hence we remand the case to the District Court for further proceedings.

I

Two days after four men robbed a Safeway store, Proctor was arrested at home. He was read the *Miranda* warnings, and taken to the police station. There, in the course of filling out a "lineup sheet" on appellant, the arresting officer asked him whether he was employed. According to the officer, Proctor answered that he had not worked for three weeks, but that when he did work it was for his uncle, Alfred Brown.

At trial Proctor testified that he had been working for his uncle at the time the robbery was committed. On cross-examination he denied having told the officer that he had not worked for three weeks. The Government then brought on the arresting officer, who testified as described above.

■ *Miranda* teaches that suspects have a right to remain silent and a right to the assistance of counsel—appointed counsel if need be—when they are subject to in-custody interrogation. 384 U.S. at 467–473, 86 S.Ct. 1602. Statements obtained in derogation of these rights are not admissible into evidence.

■■ At the outset, we hold that the questions which the arresting officer asked Proctor in the course of filling out the lineup sheet constituted in-custody interrogation. It may be that the officer asked these questions without any intent to elicit from Proctor a statement, damaging or otherwise, bearing on the crime with which he was charged. But the intent with which the questions were

asked is not relevant here. Even innocent questions asked of a suspect in the inherently coercive atmosphere of the police station may create in him the impression that he must answer them. His answers then cannot be considered voluntary in the sense required by *Miranda*. Where such answers turn out to be damaging to the suspect, they cannot be used against him at trial, absent a valid waiver of the *Miranda* rights. As the Supreme Court has held in a related context:

> " * * * The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, *even if not so designed,* to eliciting damaging statements to support * * his guilt."

Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957). (Emphasis added.)

It is argued that the *Walder-Tate* doctrine [1] permits the introduction, for impeachment purposes, of evidence obtained in violation of *Miranda*. According to that doctrine, when a defendant goes beyond a mere denial of complicity in the crime to introduce an affirmative defense, illegally obtained evidence may be introduced to impeach him on collateral matters relating to that defense.

 Without considering whether the impeachment in this case was on a point sufficiently collateral to come within *Walder* and *Tate,* we hold that the *Walder-Tate* exception to the exclusionary rule does not apply to evidence obtained in violation of *Miranda*.

In *Miranda* the Court commanded the exclusion of all statements obtained in violation of its strictures:

> " * * * [N]o distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. *In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial* or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. * * *"

384 U.S. at 477, 86 S.Ct at 1629. (Emphasis added.) Thus the Court specifically rejected the use for impeachment purposes of statements intended to be exculpatory. We can discern no reason in logic or policy to treat differently statements, like Proctor's here, presumably intended as neither inculpatory nor exculpatory. *See* Blair v. United States, 130 U.S.App.D.C. 322, 401 F.2d 387 (1968).

 There remains the question whether Proctor's statement to the arresting officer was made subject to a valid waiver of his *Miranda* rights. The Court in *Miranda* held:

> " * * * [A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. * * *

> "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. * * *

> " ' * * * *The record must show,* or there must be an allegation and evidence which show, *that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.*' "

1. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960).

384 U.S. at 475, 86 S.Ct. at 1628. (Emphasis added.) The immediate availability of offered counsel at the place of interrogation is, of course, a primary consideration in determining the *bona fides* of the offer and the validity of the waiver.

 The record now before us is inadequate to support a finding of valid waiver under *Miranda*. Since no *Miranda* objection was made at trial—we notice the *Miranda* issue on appeal as a "defect affecting substantial rights," Rule 52(b), FED.R.CRIM.P.—the Government might not have brought forward all the evidence available to establish a waiver on Proctor's part. Hence we now remand the case to the District Court for a hearing to determine whether Proctor made his statement to the arresting officer subject to a valid *Miranda* waiver.[2] If it is determined that he did not, he must have a new trial.

## II

 The Government's case-in-chief against Proctor consisted of in-court identifications by two eyewitnesses to the robbery. One of these witnesses, Arkadie, made a preliminary identification of Proctor at a police station confrontation. In its memorandum opposing Proctor's motion for a new trial, the Government apparently concedes that the confrontation took place in the robbery squad office, rather than under proper lineup conditions. There are further suggestions in the trial record itself that the confrontation might have been suggestive.[3] Finally, the affidavit supporting the arrest warrant issued for Proctor states that the initial identification of him was by photograph. Because the record is unclear on these pre-trial identifications, the District Court should on remand determine whether the procedures used were unnecessarily suggestive, and if so whether they rendered inadmissible Arkadie's in-court identification of Proctor under the standards laid down in Stovall v. Denno, *supra*; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and decisions of this court developing those standards.

So ordered.

TAMM, Circuit Judge (concurring in part and dissenting in part):

While I concur in the majority's holding to remand this case for a determination of the out-of-court identification procedures in the light of *Stovall* and *Simmons*, I cannot, in conscience, adhere to its ruling with respect to the *Miranda-Tate-Walder* issue in this appeal.[1] Appellant argues that the averment of the defendant, *id est*, that he had not worked for three weeks, goes directly to the issue of guilt or innocence and not simply that it affects his credibility. For this position they rely on Johnson v. United States, 120 U.S.App.D.C. 69, 344 F.2d 163 (1964). However, in *Johnson* the statement in question was a direct confession implicating the defendant—denied from the stand and brought out in rebuttal. Noting that the statement was given in

2. It is suggested that to deny the prosecution the right to impeach an accused with his own statement is an inducement to perjury. Of course an accused may be impeached with his own statement provided that statement is obtained in compliance with prophylactic rules designed to protect the integrity of the fact-finding process and the rights of an accused without counsel in a police station. *Compare* Simmons v. United States, 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968).

3. On cross-examination of Arkadie, Proctor's counsel elicited testimony to the effect that the other men present at the police station confrontation may have been substantially taller than Proctor. The cross-examination did not clarify whether the other men were in a lineup with Proctor, or were merely standing in the robbery squad office.

1. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tate v. United States, 109 U.S. App.D.C. 13, 283 F.2d 377 (1960); Walder v. United States, 347 U.S. 62, 74 S. Ct. 354, 98 L.Ed. 503 (1954).

violation of the principles espoused in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), this court looked to see if that same evidence could be utilized by the Government to impeach the defendant under the doctrine of Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960) and Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). In *Johnson* we refused to permit, for impeachment purposes, the introduction of illegally obtained statements *"which bear directly on a defendant's guilt or innocence." Supra* 120 U.S.App.D.C. at 72, 344 F.2d at 166. (Emphasis supplied.) I am in complete agreement with that principle. However, the *Johnson* case is distinguishable from the instant case in that his statement was *per se* inculpatory. The statement of David Proctor on the other hand, was innocuous at the time and place uttered and only became crucial when viewed in the light of his alibi defense at trial. As Judge Burger said in *Tate,* "when (the defendant) gave one story to the police and another in court, and *neither story covered any act which was per se inculpatory,* the jury is entitled to hear both versions." Tate v. United States, *supra* 109 U.S.App.D.C. at 16, 283 F.2d at 380 (emphasis supplied). The question of the detective herein was to obtain information for a line-up sheet for police use in identification (Tr. Vol. II p. 40). The answer elicited was neither *per se* inculpatory nor exculpatory.[2] It would become inculpatory only if the jury sought to disbelieve it. It was their prerogative.

Appellant also relies on Blair and Suggs v. United States, 130 U.S.App. D.C. 322, 401 F.2d 387 (1968) as requiring a remand on this issue. *Blair,* however, dealt with a detailed account of the defendant's whereabouts prior to, during and subsequent to an alleged robbery. Those questions sought to pinpoint the defendant's whereabouts and were thus "directly related to the offense charged." Blair and Suggs v. United States, *supra* note 9. Here the questioning was not an attempt to encourage the defendant to explain his whereabouts at the time of the robbery but merely to determine if the defendant was employed. As the Supreme Court said in Walder v. United States, *supra* 347 U.S. at 65, 74 S.Ct. at 356, "[the defendant] must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal, evidence illegally secured by it * * *. Beyond that, however, *there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."* (Emphasis supplied.)

"Do you solemnly swear that the testimony you shall give to the Court and jury in the case now on trial *will be the truth, the whole truth and nothing but the truth,* so help you God?"

"I do."

Thus begins the testimony of a witness in our trial courts. It is with fear of the Maker and jeopardy of impeachment that the subsequent testimony is supplied. The majority holding vitiates the "jeopardy" element and leaves to an overburdened Providence the sole responsibility for insuring the credibility of a witness. In a world that preaches "God is dead" and where it is vogue to flaunt civil authority the question of oaths and truth is slowly becoming academic. The instant ruling gives this defendant a shield which he in turn wields as a perjurious sword against a defenseless prosecutor. We said in *Tate* that we intend to inhibit testifying falsely. Today we disregard that intention.

2. Had the defendant been asked where he was living (I suppose it was in fact asked) and had given an answer which was later to conflict with his alibi could it be argued that the Government could not confront him with that conflict (by way of impeachment) regardless of Miranda?