**UNITED STATES of America,**
**Appellee,**

v.

**Edward Junior CLARK, Appellant.**

**No. 73-2420.**

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1974.

Decided July 9, 1974.

Walter H. Bennett, Jr., Charlotte, N. C., for appellant.

David B. Sentelle, Asst. U. S. Atty. (Keith S. Snyder, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and FIELD, Circuit Judge.

BOREMAN, Senior Circuit Judge:

On June 7, 1973, the West Branch of the Northwestern Bank of Charlotte, North Carolina, was robbed. The robber, wearing a halloween mask that covered his entire head, carried a "walkie-talkie" and a .537 magnum pistol. A sum of $16,861.00 was taken from a bank, its deposits being insured by the Federal Deposit Insurance Corporation. Police pursued the robber as he drove away from the scene and eventually arrested him. He was later identified as Fancy English, Jr. Upon arresting English the police recovered all of the stolen money, including "bait money." English informed the authorities that Edward Junior Clark (the appellant here) had aided him in the robbery. According to English, Clark was stationed in a second getaway car near the bank and had a "walkie-talkie" for the purpose of communicating warnings to English during the robbery. Clark, a bus driver for Charlotte Coachline, was stopped by F.B.I. agents while driving his regular route on June 8, 1973. Armed with an arrest warrant, the agents took Clark into custody, told him he was a suspect in the bank robbery and informed him of his rights. Clark, although declaring that it must be a mistake, said he did not wish to make a statement. He was taken to the U. S. District Courthouse in Charlotte to appear before a U. S. Magistrate for a bond hearing and a determination of indigency. Bond was set at $5,000.00 and it was determined that Clark was not entitled to court-appointed counsel as an indigent.

After the hearing, at approximately 4:30 p. m. on June 8, Clark was con-

fronted by F.B.I. agents Kenny and Willis. After informing him they wished to interview him concerning the robbery of June 7, Kenny advised Clark of his rights by reading aloud a form entitled "Advice of Rights, Waiver of Rights." Clark then read the form to himself and said, "I had better talk to a lawyer." The agents announced that such a request effectively ended the interview. Once again Clark declared that the arrest was a mistake and that he knew nothing about the robbery. The agents left at 4:50 p. m. and the U. S. Marshal transported Clark to the county jail.

At 8:00 p. m. on the same day, June 8, agents Kenny and Willis went to the jail to fingerprint Clark. The three were in a small rectangular room with no one else present. Agent Kenny, who admits that he was the *initiator* of a conversation concerning interrogation, asked Clark to submit to further questioning regarding the bank robbery. Even though the agents knew that Clark only four hours earlier had expressed the desire for the advice of counsel and that he had no attorney as yet, they continued their efforts to persuade him to answer their questions. When Clark persisted with his claim of mistake agent Kenny made the following statement:

> "If, in fact, you have nothing to do with any of this, you have nothing to fear from us. In other words, you have nothing to lose. On the other hand, if you are involved, then it will come around you."

Next the officers told Clark that his friend, English, had made serious allegations against him in a confession. Although agent Kenny stated that he could not recall with certainty, he admitted that in all likelihood he stated that Clark would be better off if he told the truth. The agents read Clark his rights from the waiver form and had him read them again. Clark refused to sign a waiver of his rights but did consent verbally to submit to questioning without an attorney present. Interrogation commenced sometime after 8:00 p. m. and continued until 8:56 p. m. The statement taken from Clark implicated him in the bank robbery. as an accomplice of English.[1]

During the interrogation on the night of June 8, Clark asked if he could have court-appointed counsel represent him at

---

1. Compare the events that occurred during this interrogation with established interrogation practices criticized in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court referred to police manuals and texts, then in general use, in its discussion:

> The officers are told by the manuals that the "principal psychological factor contributing to a successful interrogation is *privacy*—being alone with the person under interrogation." Miranda v. Arizona, 384 U.S. 436, 449, 86 S.Ct. 1602, 1615, 16 L. Ed.2d 694 (1966).
>
> To highlight the isolation and unfamiliar surroundings, the manuals instruct the police to display an air of confidence in the suspect's guilt and from outward appearance to maintain only an interest in confirming certain details. . . . These tactics are designed to put the subject in a psychological state where his story is but an elaboration of what the police purport to know already—that he is guilty. Explanations to the contrary are dismissed and discouraged. *Id.* at 450, 86 S. Ct. at 1615.

> In the event that the subject wishes to speak to a relative or an attorney, the following advice is tendered:
> "[T]he interrogator should respond by suggesting that the subject first tell the truth to the interrogator himself rather than get anyone else involved in the matter. . . . The interrogator may also add, 'Joe, I'm only looking for the truth, and if you're telling the truth, that's it. You can handle this by yourself.'" *Id.* at 454, 86 S.Ct. at 1617.
>
> The manuals also contain instructions for police on how to handle the individual who refuses to discuss the matter entirely, or who asks for an attorney or relatives. The examiner is to concede him the right to remain silent. "This usually has a very undermining effect. . . ." *Id.* at·453, 86 S.Ct. at 1617.

The *Miranda* Court, in condemnation of then current police interrogation practices, practices similar to those employed in this case, was concerned with the obvious evils attendant upon such procedures.

an upcoming lineup. Agent Kenny agreed to talk to the U. S. Magistrate or the Judge about the matter. Thereafter the U. S. Attorney told Kenny that it was impossible for Clark to have court-appointed counsel and that Clark had previously been so informed by the Magistrate. Kenny failed to relay the substance of this discussion to Clark. Prior to June 16, 1973, a lineup was scheduled, but it was canceled since Clark had not yet retained the services of an attorney. Although the authorities were aware that Clark had a right to be represented by counsel at the lineup they thought, so they testified, that the counsel issue was being employed by Clark as a delaying tactic. Consequently on June 16, 1973, the lineup was held; Clark was not represented by counsel.[2] The lineup consisted of Clark and English, both black, three other black males and one white male. The lineup was viewed by M. J. Mitchell, owner of a novelty and gift shop, who identified Clark as one of two men who had been shopping for a mask similar to the one used in the bank robbery.[3]

On July 3, 1973, the Grand Jury returned a multi-count indictment against English and Clark in which Clark was charged with the offense of aiding and abetting English in the armed robbery of the bank in violation of 18 U.S.C. § 2113(a), (b) and (d) and 18 U.S.C. § 2. Clark plead not guilty and was tried before a jury. At trial Clark moved to suppress the evidence concerning the oral confession. He also moved to strike the in-court identification, claiming that certain irregularities in the lineup tainted that identification. The trial judge denied both motions. English testified for the government implicating Clark as joining in planning the robbery and as aiding and abetting as a lookout. The jury returned a verdict of guilty and Clark was sentenced to twelve years in prison.

■ Clark has addressed his appeal primarily to the issue of the claimed violation of his fifth amendment right not to be compelled to be a witness against himself in light of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He insists that his confession was coerced and should not have been admitted in evidence against him. The record suggests that these same coercive factors also resulted in Clark's possible waiver of his sixth amendment right to counsel representation and advice prior to subjecting himself to police interrogation. It is virtually impossible here to separately analyze and consider the claimed violation of those rights. We observe that evidence which is offered to show that a confession was the product of coercion may also be relevant on the issue of whether there was an accompanying voluntary waiver of the right to counsel.

■ Presented for determination here is the question whether the fifth and sixth amendment rights of an accused, who had previously indicated his desire to consult with an attorney, were violated when he was interviewed at the insistence of government agents without the presence of an attorney. The single issue underlying the purported waiver of each of those constitutional rights is whether the record supports the conclusion that such waiver was *voluntarily* made. The standard of voluntariness is not whether the accused was coerced in traditional terms but whether appropriate measures were taken to safeguard

2. The fact that Clark did appear with privately retained counsel at a preliminary hearing only two days after the lineup lends some credence to the surmise that Clark was using the counsel issue as a delaying tactic.

3. Mitchell knew English personally and had already identified him as the purchaser of the mask. Mitchell testified that two men came to his shop looking for a certain type of halloween mask; that one was English and the other was Clark, the man he had picked from the lineup; that because most of his masks were in storage Mitchell made no sale that day; that English came back alone on two more occasions and eventually purchased two masks. One mask was in evidence and was identified by the witness as the same type sold by him to English.

his rights and to insure that his statements were the product of free choice. Miranda v. Arizona, 384 U.S. 436, 457, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The legally significant facts surrounding the interrogation session at which Clark confessed are undisputed.

■■ During the initial interview by F.B.I. agents following his arrest, Clark indicated his desire to speak with an attorney prior to answering any questions. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The Government recognizes this principle but insists that Clark, at the subsequent interview waived his right to counsel and voluntarily confessed to the offense charged. We recognize the possibility that, under given circumstances, an accused may later waive a right which he previously asserted. Dillon v. United States, 391 F. 2d 433, 437 (10 Cir. 1968). However, evidence that an accused has previously asserted his right to confer with counsel is a factor which weighs heavily against a finding that a subsequent uncounseled confession is voluntary. *See* United States v. Slaughter, 366 F.2d 833, 840–841 (4 Cir. 1966). Additionally, we note that agent Kenny stated unequivocally that he initiated the interview during which Clark allegedly waived his right to speak with an attorney and confessed. This initiation of the subsequent interview at which the confession was elicited is a factor which, under these circumstances, is a strong indication of invol-

untariness. United States v. Slaughter, *supra* at 840.

■■ There is nothing in the record to suggest that agent Kenny's decision to conduct a second interrogation of Clark was prompted by any manifestation on the part of Clark that he had changed his mind and desired to be interrogated without the assistance of counsel; "[o]nce the privilege has been asserted, . . . an interrogator must not be permitted to seek its retraction, total or otherwise." United States v. Crisp, 435 F.2d 354, 357 (7 Cir. 1970). Less than four hours had elapsed between the time Clark stated that he wanted to talk with an attorney before answering any questions about the robbery and the time he confessed; obviously this was an insufficient period of time for Clark, who was incarcerated, to retain counsel. At the very least, the agents should have afforded Clark sufficient time to employ and consult with counsel before *they initiated* any subsequent interview.

■ We have noted elsewhere in this opinion the similarity between the psychological tactics condemned by the Supreme Court in *Miranda, supra,* and the techniques employed by the interrogators in this instance.[4] We thus find ample support for our conclusion that Clark's confession was the product of coercive conduct by the government agents and not the result of a voluntary waiver of his fifth amendment rights.

The factual circumstances surrounding Clark's waiver of his sixth amendment right to counsel are also strikingly similar to those which we held compelled reversal of the conviction of the defendant in United States v. Slaughter, 366 F.2d 833 (4 Cir. 1966). We reproduce the following passage from *Slaughter* which we find pertinent here:

"We find no waiver of the right to counsel in this record. Here, appellant manifested his desire to exercise his right to counsel. For reasons of

4. See note 1, *supra*.

conscience or otherwise, he did not initiate additional conversation with agents of the F.B.I. about the matter with which he was charged . . . . His interrogation was initiated solely by the F.B.I. In the time that had elapsed since the request to consult counsel, appellant could have obtained a lawyer if he knew of one to employ and had the means to employ him; but it cannot be said that his failure to have a lawyer within approximately 25 hours of his request was unreasonable delay on his part, or an attempt to postpone indefinitely a decision on his part whether to submit to interrogation. . . . A statement that appellant had a right to remain silent, on the facts here, was insufficient to overcome the respect to which his expressed desire to consult counsel was entitled. This statement here followed by a response to interrogation with nothing more, is insufficient to form a basis for waiver. We conclude that appellant did not waive his rights under the Sixth Amendment, and admission of the testimony concerning what he said in response to interrogation after he claimed the right to counsel was reversible error."

*Slaughter, supra* at 840–841.[5]

 The undisputed evidence in this record strongly suggests coercion; the facts do not provide adequate support for the conclusion of the district court that Clark voluntarily waived his constitutional rights. A confession can be received into evidence only after the Government has established by a *preponderance* of the evidence that the confession was voluntarily made. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); United States v. Watson, 469 F.2d 362 (5 Cir. 1972).

We conclude that the district court was clearly erroneous in its finding that the defendant had voluntarily waived his constitutional rights under the fifth and sixth amendments.

 Since we decide that the admission of Clark's confession into evidence was reversible error it will be necessary that he be released or retried. In the event he is retried it is obvious that the same objections will be made to the pretrial lineup that Clark has pressed before us on this appeal. In the interest of judicial economy we address ourselves to that issue to assist the trial court.

 Clark contends that he was denied his right to counsel at the pretrial lineup as a result of agent Kenny's conduct. Clark alleges that he was misled by Kenny into believing that counsel would be provided for him at the lineup. First, we note that agent Kenny agreed only to look into the matter; he did not agree to secure counsel for Clark. Secondly, Clark had been officially notified by the Magistrate that he was not entitled to the services of court-appointed counsel. Whatever confusion may have existed in Clark's mind about his entitlement for appointed counsel must have been resolved when a scheduled pretrial lineup was postponed so that Clark would have more time to *retain* counsel. "It is undisputed that [Clark] . . . was given a reasonable time to secure counsel of his personal choice. It is equally clear that he was financially able to retain counsel. In these circumstances, his failure to retain counsel was properly treated by the court as a waiver of his right to counsel [at the lineup]." United States v. Terry, 449 F.2d 727, 728 (5 Cir. 1971) (citations omitted). As we said in United States v. Grow, 394 F.2d 182, 210 (4 Cir. 1968):

"[Clark] . . . 'is incorrect in his assumption that Sixth Amendment

---

5. In *Slaughter* there was no evidence that the accused had affirmatively waived his right to counsel either orally or in writing. While in the instant case the accused did orally waive his right to counsel, he simultaneously refused to sign the waiver of rights

form. Such indecisive conduct in view of surrounding circumstances does not convince us that his apparent change of position was the product of intelligence and understanding. United States v. Nielsen, 392 F.2d 849, 853 (7 Cir. 1968).

rights have been newly-wrapped in a climate which affords a defendant the right to obtain a delay at his whim and caprice, or to obtain a reversal because he was unable to frustrate justice.' "

Furthermore, there is nothing in the record to support Clark's assertion that the in-court identification was tainted by a previous unfair out-of-court identification. The voir dire examination conducted by the district court adequately established the fairness of the lineup in which Clark participated.

The judgment of the district court is reversed and the case is remanded with directions that Clark be released and discharged from custody unless the United States shall elect to retry him within a reasonable period of time to be fixed by the district court.

Reversed and remanded.