**UNITED STATES of America, Appellee,**

v.

**Elijah Ivory Joe GRANT, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Maurice Eugene VAUGHAN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Tyrees Coloza WHITEHEAD, Appellant.**

Nos. 75–2347—75–2349.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1976.

Decided Jan. 21, 1977.

---

**944**

Robert F. Pannell, Richmond, Va. [court-appointed counsel], for appellant in 75–2347.

R. R. Ryder, Richmond, Va. [court-appointed counsel], for appellant in 75–2348.

Robert P. Geary, Richmond, Va. (Clinton B. Corry, Sr., Richmond, Va. [court-appointed counsel] on brief), for appellant in 75–2349.

N. George Metcalf, Asst. U.S. Atty., Richmond, Va., Richard Cullen, Third Year Law Student (William B. Cummings, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendants appeal their conviction under an indictment charging conspiracy to commit bank robbery,[1] armed bank robbery,[2] and carrying and using a firearm during the commission of a felony.[3] Each defendant raises different issues, peculiar to his own case. We shall consider separately the claims made by each defendant, beginning with those of the defendant Grant.

I

The exceptions of the defendant Grant relate to the admissibility of his confessions and of the fruits of such confession. He contended in the District Court that his confession was inadmissible on the grounds (1) of his incompetency either because he was under the influence of drugs or as a result of drug withdrawal and (2) of a violation of his *Miranda* rights. After a suppression hearing, the District Court found by the preponderance of the evidence that the confession had been voluntarily and intelligently given without any violation of the defendant's *Miranda* rights. A like conclusion was reached by the jury, following the submission of such issues to it. On appeal, the defendant has limited his attack on the admissibility of the confession to the claim of a *Miranda* violation. The proper resolution of this claim of error requires some review of the circumstances under which the confession was obtained.

According to the account given by the FBI agents, Grant was taken into custody by the local police in Loris, South Carolina, for investigation in connection with a Loris bank robbery. FBI agent Burch in nearby Myrtle Beach was advised that Grant was being held for investigation by the local police and he came to Loris to interview Grant. At the time Agent Burch was only interested in the Loris bank robbery and had no knowledge of the Richmond bank robbery, which was the subject of the indictment under which the defendant was convicted. After receiving the *Miranda* warnings from FBI Agent Burch, and executing a waiver of those rights, Grant denied any connection with the Loris bank robbery and in answer to questions by FBI Agent Burch said he had obtained the money with which he had purchased an automo-

---

1. 18 U.S.C. § 371.

2. 18 U.S.C. § 2113(a) and (d); 18 U.S.C. § 2.

3. 18 U.S.C. § 924(c)(1); 18 U.S.C. § 2.

bile and insurance, in Loris, amounting to some $1,900 in cash, from the sale of marijuana in Richmond, Virginia. He had previously told the chief of police in Loris that his father had given him a large sum of money.

A short time later, in checking out Grant after his interview, Agent Burch learned for the first time of the charges against Grant arising out of the bank robbery in Richmond, Virginia. Accompanied by two other agents, he visited Grant again and advised him he was under arrest for a Richmond bank robbery. Grant denied any involvement. FBI agents then read to Grant his *Miranda* warnings, explaining to him certain words or phrases in the warning and took from him a written waiver. After this warning, they told Grant they wanted to talk to him about the Richmond robbery. Grant replied he had nothing to do with that robbery and requested a lawyer. After Grant expressed a desire for an attorney, Burch and the other agents made no effort to interrogate Grant about the robbery itself. Burch did seek the standard identification information from him. When Burch, however, finished obtaining the identification information, Grant himself inquired of Burch, "what happens to me now? * * * Where do I go? Am I going back to Richmond?" Burch replied to Grant's inquiry by stating that he [Grant] was to be taken before a United States Magistrate, who would repeat to him his rights, appoint a lawyer for him, and fix bond. Grant continued to express concern "with Richmond, whether he would be taken back to Richmond" and "what would be the proceedings on [sic] Richmond up there, and what was going on in Richmond." He also inquired "about the bank robbery" itself involved in the Richmond charge. Burch then told him briefly so far as he understood the facts about the Richmond robbery, adding that four individuals were being held in custody in Richmond on charges arising out of it. At this point the FBI agents concluded the interview and were preparing to leave when Grant suddenly said, "[i]t is all true." When he made this spontaneous statement, the FBI agents turned back; and Hussey, one of the agents, warned Grant anew of his rights and reminded him that he had said he wanted an attorney. Grant answered that he knew his rights "but [he] wanted to make a statement to [the FBI agents] at this time." Thereupon, he proceeded to detail the circumstances of the robbery, accounting for the money he had realized as his part of the robbery, and taking the agents to the homes of two of his relatives where he had secreted some of the money so taken. The money thus taken is sought to be reclaimed by the defendant as a part of his motion to suppress as fruits of an illegal confession.

Grant, in his testimony at the suppression hearing [he did not testify at trial], did not contradict in any substantial way this account of the FBI Agent Burch. He explained his failure to contradict by testifying that he was a heroin addict who was so confused by withdrawal pains at the time of the alleged confession that, though he remembered signing the waiver-of-rights form, he had no clear recollection of the circumstances under which his confession was given. We must, therefore, take as established Agent Burch's account of the events surrounding Grant's confession.

█ On the basis of the record at the suppression hearing and Agent Burch's undisputed testimony, we find no error in the District Court's denial of the motion to suppress or in its ruling on the admissibility of the confession or of the bait money obtained as a result. It is true that when Grant requested counsel, *Miranda* imposed upon the investigating officers the duty to cease any questioning of the accused about the crime under investigation and not to resume until the accused had been given a reasonable opportunity to secure counsel or had been offered and refused counsel. This does not mean, though, that the accused may not later waive his earlier request for counsel,[4] though such waiver is not to be

4. *United States ex rel. Hines v. LaVallee* (2d Cir. 1975) 521 F.2d 1109, 1112–3, *cert. denied* 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101; *Biddy v. Diamond* (5th Cir. 1975) 516 F.2d 118,

lightly assumed.[5] The burden of establishing such waiver by the preponderance of the evidence, however, rests upon the Government and that burden is a heavy one, requiring convincing evidence.[6] This is so because, as Justice White observed in *Michigan v. Mosley* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, waiver of an accused's right to counsel, after such right has been asserted, "may properly be viewed with skepticism."[7] And this "skepticism" finds increased justification if there is no substantial lapse of time between the request for counsel and its alleged waiver.[8] In any event, whenever the Government claims waiver of a previously expressed request for counsel by an accused, the conduct of the investigating officer after the right to counsel is asserted must be scrutinized with special care for any possibility of imposition, coercion or unfair suggestion.[9]

 It does not follow, though, that *Miranda* erects an absolute *per se* bar on any conversation with the accused by the investigating officers after the former has requested counsel. It only inhibits investigative interrogation related to the specific crime itself. As the Court in *United States ex rel. Hines v. LaVallee, supra,* 521 F.2d at 1113, declared, *Miranda* was only "concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identify-

ing data required for booking and arraignment." Nor does *Miranda* protect an accused, even though he has requested counsel, from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers. In *United States v. Drummond* (2d Cir. 1965) 354 F.2d 132, 144, *cert. denied* 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031, the Court remarked that "there *can be* no sound public policy requiring law enforcement and prosecutory agencies affirmatively to prevent or deter individuals from confessing that they have engaged in unlawful conduct." (Emphasis in opinion).

In this case, the testimony was that no attempt at questioning Grant about the Richmond robbery was made by the investigating officers after Grant requested counsel. The officers did proceed to take from him certain standardized identification information. So far as the record indicates, none of these inquiries had the slightest connection with the Richmond robbery nor could the answers have provided the officers with any incriminating information.[10] As we understand the defendant's argument, he does not contend that an identification inquiry, unrelated to any inquiry into the substantive offense under investigation, conducted immediately after the accused has requested counsel, would be a violation

122, *cert. denied* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194; *United States v. Cavallino* (5th Cir. 1974) 498 F.2d 1200, 1202; *United States v. Dority* (6th Cir. 1973) 487 F.2d 846, 848; *United States v. Fellabaum* (7th Cir. 1969) 408 F.2d 220, 224–5, *cert. denied* 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed.2d 69; *Coughlan v. United States* (9th Cir. 1968) 391 F.2d 371, 372, *cert. denied* 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139; *United States v. Anthony* (5th Cir. 1973) 474 F.2d 770, 773; *United States v. La Monica* (9th Cir. 1972) 472 F.2d 580, 581.

In *United States v. Slaughter* (4th Cir. 1966) 366 F.2d 833, 840, the Court said:
\* \* \* The right to counsel, like most other constitutional rights, may be waived.

5. *United States v. Slaughter, supra,* 366 F.2d at 841.

6. *United States v. Fellabaum, supra; United States v. Cavallino, supra.*

7. 423 U.S. at 110, n.2, 96 S.Ct. at 329.

In using the term "skepticism," Justice White suggests clearly that there is no absolute rule against waiver by an accused of his previously expressed request for counsel; he simply underscores that the burden of proving such waiver is a heavy one.

8. *United States v. Clark* (4th Cir. 1974) 499 F.2d 802.

9. *United States v. Crisp* (7th Cir. 1970) 435 F.2d 354, 357, *cert. denied* 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116.

10. In this latter respect, the identification inquiry here is different from that in *Hines, supra,* 521 F.2d at 1113.

of the rule in *Miranda.* Nor, would such a claim, if asserted, have had merit. In *United States ex rel. Hines v. LaVallee, supra,* the Court dealt specifically with that very situation and found the identification inquiry not to represent a *Miranda* violation.[10a] The defendant would, however, find impropriety in the identification questioning in this case because Agent Burch sought substantially the same information he had previously obtained when he first questioned Grant. This, the petitioner argues, warrants the conclusion that this inquiry, though ostensibly innocent and proper, was a masquerade for continuing to keep the accused under pressure in the hope of inducing an admission. Unquestionably, as the defendant suggests, Agent Burch could have referred back to his earlier report and secured thereby the information he sought in this second inquiry for identification information. On the other hand, it is likely that it was about as easy for the investigating officer to go through the standard questions again as to secure the same information by reference to his earlier report of his first interview with Grant. In any event, the agent justified his second inquiry as a normal standardized inquiry always carried out in connection with any arrest and that his action in this case simply followed normal procedure. This claim of standardized procedure was the same position as that taken by the investigating officers in *Hines* and accepted as permissible by the Court in that case. Perhaps, though, the most conclusive answer to petitioner's argument on this point is that nothing damaging to the accused was secured during this identification interrogation or as a result of it. Moreover, the trial court, which had the advantage of observing the witnesses and their demeanor, implicitly found that the investigating officer had acted in good faith, without guile or subterfuge, in

conducting this inquiry, and such a finding is not to be lightly disturbed.

It must be remembered, too, that the critical statement of the accused occurred after this identification inquiry and was unrelated to it. It followed some time after the identification inquiry had concluded and was at the end of a discussion which the accused himself initiated with the officers. He wanted to know from the officers, as we have already said, what was going to be done with him and he desired to find out, it would seem, what information the officers had developed about the robbery itself. With this in mind, he began this subsequent discussion and he was the one who pursued it, under the undisputed testimony. This distinguishes this case from our earlier decisions in *Clark*[11] and *Slaughter*[12] in both of which the officers initiated the critical conversation. During these later inquiries from the accused, the officers appear to have been quite circumspect about what they told the accused concerning the robbery. They made no coercive or even suggestive statement to the accused; according to the record, they contented themselves with simply answering his inquiries. They made no statement to him, as did the officers in *Mosley* and in *Hill v. Whealon* (6th Cir. 1974) 490 F.2d 629, that some person in custody in Richmond or some employee of the bank had identified or named him as a participant in the robbery, a statement that may well be calculated to arouse the accused's apprehensions. They stated simply that four people were in custody. They did not follow that information with any urging that he reconsider his refusal to answer questions without counsel, as in *United States v. Collins* (2d Cir. 1972) 462 F.2d 792, 797, *cert. denied* 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254. And it was only after this conversation between Grant and the inves-

**10a.** To the same effect, *see Farley v. United States* (5th Cir. 1967) 381 F.2d 357, 358, *cert. denied* 389 U.S. 942, 88 S.Ct. 303, 19 L.Ed.2d 295; *Morrison v. United States* (8th Cir. 1974) 491 F.2d 344, 346–7; *United States v. La Monica, supra,* 472 F.2d at 581; *contra, Proctor v. United States* (1968) 131 U.S.App.D.C. 241, 404 F.2d 819, 820–1.

**11.** *United States v. Clark, supra,* 499 F.2d 802.

**12.** *United States v. Slaughter, supra,* 366 F.2d 833.

tigating officers had seemingly ended that Grant unexpectedly, according to the record, made his incriminating statement, indicating his knowledge of, and participation in, the robbery, followed by his waiver of his previously invoked right to counsel.

The District Court did not commit reversible error, in our opinion, in finding that, under those circumstances, such waiver was voluntarily and intelligently exercised and that Grant's later confession, together with its fruits, was admissible.

## II

The defendant Vaughan complains that the District Court erred in not granting his motion for severance after the Government indicated that it intended to offer the confession of his co-defendant Grant.

 In *Close v. United States* (4th Cir. 1971) 450 F.2d 152, 153–4, *cert. denied* 405 U.S. 1068, 92 S.Ct. 1513, 31 L.Ed.2d 799, we indicated our approval of the rule set forth in Section 2.3 of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft 1968), as quoted by Justice Marshall in his dissenting opinion in *Nelson v. O'Neal* (1971) 402 U.S. 622 at 636, 91 S.Ct. 1723, 29 L.Ed.2d 222. As summarized by Justice Marshall, that rule is "that if a defendant in a joint trial moves for a severance because the prosecutor intends to introduce an out-of-court statement by his codefendant that is inadmissible against the moving defendant, then the trial court should require the prosecutor to elect between a joint trial in which the statement is excluded; a joint trial at which the statement is admitted but the portion that refers to the moving defendant is effectively deleted; and severance." In this case, the Government conformed precisely to the second alternative as stated by Justice Marshall: It carefully omitted and deleted all reference to the

moving defendant from any statement of the co-defendant Grant admitted at trial. Since there was nothing in Grant's confession implicating his co-defendant Vaughan, *Bruton v. United States* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, is inapplicable and the District Court did not err in denying Vaughan a severance.

## III

 The defendant Whitehead raises the point that his conviction under both § 2113(d), 18 U.S.C. (armed robbery) and § 924(c), 18 U.S.C. (the firearms statute) constituted double jeopardy, in violation of the Fifth Amendment. Contrary to the defendant's contention, we have recently decided that § 2113(d) and § 924(c) constitute separate offenses and will support separate convictions and sentences. *United States v. Crew* (4th Cir. 1976) 538 F.2d 575; *United States v. Mathis* (4th Cir. 1976) 538 F.2d 326.

## IV

Finding no merit in any of their contentions, the convictions of the three defendants are affirmed.

*AFFIRMED.*

WINTER, Circuit Judge, concurring and dissenting:

While I agree that the separate grounds for reversal advanced by defendants Vaughan and Whitehead are lacking in merit and their convictions should be affirmed, I would reverse as to Grant and grant him a new trial.

When interrogated by the police and advised of his *Miranda* rights, Grant claimed his right to counsel. His claim was not honored. The interrogation continued for what the majority charitably describes as "the standard identification information." *

---

\* The only record evidence about the nature of defendant's interrogation after he claimed his right to counsel is found in the testimony of F.B.I. Special Agent Burch. The agent said:

. . . And he did not desire to make any other statement without an attorney present.

Q. All right. What did you then do with the interview?

After the obtention of "the standard identification information," conversation between defendant and his interrogator continued to the point that when defendant was apprised of the knowledge of the F.B.I. of how the Richmond bank robbery had been carried out and the fact that four individuals had been arrested, he replied, "It is all true," twice repeated. The agents then proceeded to take a formal admission of guilt, preceded by the giving of the *Miranda* warnings again. Perhaps, significantly, defendant declined to sign a formal waiver of his *Miranda* rights although requested to do so. He did, however, sign his confession.

I

*Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), could hardly be more specific in saying that when a defendant is advised of his right to counsel and articulates his claim to counsel, *interrogation must cease until an attorney is present.* Of course there are cases where a defendant later changes his mind and initiates a conversation, or agrees formally to be interrogated, *see Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *United States v. Tafoya,* 459 F.2d 424 (10 Cir. 1972); *United States v. Brown,* 459 F.2d 319 (5 Cir. 1971), *cert. denied,* 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972), where a court may conclude that there has been a waiver of the right to counsel, but this is not such a case. No significant delay occurred between defendant's claim of his privilege and the agent's dishonor of it.

We have impliedly, if not explicitly, recognized the force of the *Miranda* mandate. *See Strickland v. Garrison,* No. 76–1683 (decided June 22, 1976) (Winter, Craven, Butzner, JJ.) (unpublished). In *Strickland,* we set aside a conviction based in part upon a confession obtained in violation of *Miranda*'s holding that the right to counsel must be respected. There we give *Miranda*

its literal meaning. *Proctor v. United States,* 131 U.S.App.D.C. 241, 404 F.2d 819 (1969), is in full accord. The recentness of the decision in *Strickland* makes all the more inexplicable the result reached today.

Admittedly there are lower court cases which have diluted *Miranda*'s mandate concerning the right to counsel, but I find some of them distinguishable and others I would respectfully decline to follow. *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109 (2 Cir. 1975), is the principal case in which it is said that "[d]espite the breadth of the language used in *Miranda,* the Supreme Court was concerned with protecting the suspect against interrogation of an investigative nature rather than the obtaining of basic identifying data required for booking and arraignment." 521 F.2d at 1112–13. Besides relying on two authorities which I will later discuss, the opinion relies upon the American Law Institute's Model Code of Pre-arraignment Procedure, § 140.8(5) (April 1, 1974). An examination of the ALI Model Code immediately shows that reliance upon it is unwarranted. The commentary to both the April 1, 1974 and April 15, 1975 editions indicates that the only exception to *Miranda* is "non-investigative conversation or questions." *Id.* (April 15, 1975 ed. 53). Examples given are, "are you hungry? would you like some food? are you hurt?" *Id.* 53. Significantly, the commentary recognizes "there will be borderline cases and there is the risk that conversation on other subjects will be used as a subterfuge." *Id.* 53. Besides resting upon an unstable base, *Hines* has as an alternative holding that the incriminating information which had been obtained in violation of *Miranda* was harmless beyond reasonable doubt. I do not find *Hines* a persuasive authority.

*United States v. La Monica,* 472 F.2d 580 (9 Cir. 1972), although perhaps wrongly de-

---

A. We obtained additional background and descriptive data on him. I did not get it all to start with. We take a different background information concerning a subject under arrest as opposed to a subject we interview.

I read this evidence as establishing neither that the interrogation was "standard" nor that it was necessarily confined to "identification information."

cided, is distinguishable. There, after the defendant claimed his right to counsel, the arresting officer took possession of the objects on the defendant's person and when he encountered a slip of paper appearing to be a receipt for an attorney's fee, he asked for a description of the paper. The defendant responded with an incriminating statement to the effect that the paper was a receipt from an attorney employed by the defendant in case anything went wrong on the trip which was a flight in an aircraft loaded with marihuana. I have no doubt that when an accused is in custody awaiting the appointment of a lawyer, acceptable police procedure is to remove personal possessions from him. A receipt should be given; and if the object removed is not readily identifiable, some interrogation as to it should not be prohibited. Certainly that is not this case, and the holding in *La Monica* does not provide the answer here.

*United States v. Menichino,* 497 F.2d 935 (5 Cir. 1974), is contrary to my views, but I find myself more persuaded by the literal language of the Supreme Court in *Miranda* than a contrary view of a sister circuit. In *Menichino,* the incriminating information was obtained during the actual taking of the biographical data. While I do not think that even the taking of the biographical data should have been sanctioned, the instant case is a more aggravated one than *Menichino.* Grant incriminated himself in the conversation following the taking of "the standard identification information." The implication of the *Menichino* opinion is that once that information was obtained, all conversation should have been ceased (except possibly for the specimen questions in the ALI Model Code), particularly any which described and related to the crime of which Grant was subsequently charged.