UNITED STATES of America, Appellee,

v.

Johnny TAYLOR, Appellant.

No. 85–5224.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1986.

Decided Aug. 25, 1986.

John F. Hardaway, Federal Public Defender, Columbia, S.C., for appellant.

Dale L. DuTremble, Asst. U.S. Atty. (Vinton L. Lide, U.S. Atty., Columbia, S.C. on brief), for appellee.

Before WINTER, Chief Judge, and HALL and WILKINSON, Circuit Judges.

K.K. HALL, Circuit Judge:

Johnny Taylor appeals from his conviction by jury of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and 2. We affirm.

## I.

The Ridgeland, South Carolina, office of the Southern Bank and Trust Company was robbed of $1,040.00 by two black males on March 20, 1985. In addition to the money, the bank tellers also gave the robbers bait money and an exploding dye pack. After the robbers left the bank, they got into a red Thunderbird with a white top. At that time, the dye pack exploded.

The robbers travelled down Interstate 95 heading from Ridgeland to Savannah, Georgia. Members of the Hardeeville, South Carolina, police department pursued the robbers on the interstate until the Thunderbird crashed along the side of the roadway. The driver of the Thunderbird leaped from the car, jumped the fence next to the interstate, and fled into the woods. The police then removed the passenger, Stephen Savage, from the car.

Thereafter, the police and Denny March, a Special Agent from the Federal Bureau of Investigation, found Taylor hiding in the woods. When he was apprehended, Taylor was wearing clothing similar to that which the bank robber had been described as wearing. In addition, his clothing had dye stains on it of the type caused by the exploding dye pack.

Taylor and Savage were indicted on charges of armed robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) and 2. Savage entered a guilty plea. Counsel was appointed for Taylor, who entered a plea of not guilty and was tried before a jury on June 11, 1985.

At trial, Richard Morrison, a Hardeeville, South Carolina, policeman, testified that at the time of his arrest, Taylor had given a false name. Special Agent March also testified and stated that Taylor had identified himself as two different people when he was arrested. According to March, Taylor first identified himself as Ronald West, also known as "Snake," and then he later gave the agent his real name. The government stipulated that before Taylor gave the arresting officers any identifying information, he had been advised of his *Miranda* * rights and had requested counsel. Over Taylor's objection, the trial court admitted the testimony of both Officer Morrison and Agent March concerning the fact that Taylor had given a false name.

Taylor and Savage also testified at Taylor's trial. Taylor testified that he was in a field planting marijuana when a man came along and forced him at gunpoint to remove his clothes and put on the clothes of the other man. According to Taylor, he was told to remain still or he would be harmed, and he stayed where he was until approximately fifteen minutes later when some dogs approached him and the police arrested him. Savage testified that he and

* *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

someone other than Taylor, someone named "Snake," robbed the bank.

The government cross-examined Taylor about the fact that he had given the arresting officers a false name, and it made reference to Agent March's testimony that Taylor had identified himself as "Snake" during its closing argument to the jury. The trial judge instructed the jury that a person's assumption of a false name may be considered as evidence of a guilty conscience. The jury returned a guilty verdict against Taylor, and this appeal followed.

## II.

On appeal, Taylor contends that the officers' testimony concerning his false identification of himself was inadmissible. According to appellant, because he had invoked his right to counsel, the questioning of him concerning his identity constituted an interrogation which was improper under *Miranda*.

In *United States v. Morrow*, 731 F.2d 233, 237 (4th Cir.), *cert. denied*, 467 U.S. 1230, 104 S.Ct. 2689, 81 L.Ed.2d 883 (1984), we held that the taking of basic personal information such as name, age, and place of birth is a ministerial duty incident to arrest and custody which does not constitute "interrogation or its functional equivalent, 'reasonably likely to elicit an incriminating response.'" (Quoting *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)). Likewise, in *United States v. Grant*, 549 F.2d 942, 946–47 (4th Cir.), *cert. denied*, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977), we held that the taking of standard identification information does not violate *Miranda*.

Appellant argues that *Morrow* and *Grant* are not dispositive because the incriminating information obtained by the authorities in those cases was extraneous material and not truly responsive to the questions asked. In this case, however, the officers asked for a name and were given one. It was Taylor's identification of himself as "Snake," when considered in conjunction with Savage's statement that Savage had robbed the bank with a man by that name, which proved to be incriminating. Taylor suggests that this factual distinction requires a different rule than that set forth in *Morrow* and *Grant*. We disagree.

In the instant case, the arresting officers advised appellant of his *Miranda* rights. Although Taylor invoked his right to counsel, the officers' subsequent questioning of him concerning his identity did not amount to an interrogation prohibited by *Miranda*. The fact that Taylor's response later proved to be incriminating does not require that it be suppressed, as the officers had no reasonable expectation that their questions would be likely to elicit such information.

We are not persuaded by the dissent's view that further fact-finding is required to determine whether the police were conducting investigatory questioning rather than routine, ministerial questioning. Ordinarily, the request for identifying information, however phrased, is inherently ministerial and does not violate *Miranda*. The dissent's view would encourage judicial inspection of every routine, ministerial question, and impede the operation of necessary police booking procedures while not significantly increasing the level of protection against improper interrogation. Accordingly, we conclude that the testimony regarding appellant's identification of himself was admissible and the judgment below is affirmed.

AFFIRMED

HARRISON L. WINTER, Chief Judge, dissenting:

Upon his apprehension by the police, Johnny Taylor was informed of his *Miranda* rights, and he invoked his right to counsel. The police then engaged in an exchange with Taylor, during which they elicited from him a false name and the alias "Snake." Defendant unsuccessfully moved to suppress these statements on the ground that they were the product of interrogation after an unfulfilled request for

counsel, thus violating the rights recognized in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). While the majority rules on the present record that Taylor's *Miranda* rights were not violated, I cannot join in that opinion. I think that the present record is inadequate to reach any firm conclusions, but there is a distinct possibility that Taylor's *Miranda* rights may have been violated. I would remand the case to the district court for further evidentiary exploration with full authority to grant a new trial if it is determined that the evidence was elicited as a result of custodial interrogation and that the use of illegally obtained evidence was not harmless error.

From present affirmance, I respectfully dissent.

## I.

Under *Miranda* and *Edwards*, police must refrain from custodial interrogation once a suspect invokes his right to the presence of an attorney. The government concedes that, at the time the statements were made, Taylor was in custody, had received his *Miranda* warnings, had requested counsel and was then questioned. This case turns on whether police officers' requests that defendant identify himself constitute interrogation within the meaning of *Miranda*.

*Miranda* defined interrogation simply as "questioning initiated by law enforcement officers," 384 U.S. at 444, 86 S.Ct. at 1612, and distinguished statements thus obtained from volunteered statements, which lie outside the protection of the fifth amendment. *Id.* at 478, 86 S.Ct. at 1630. Interpreting *Miranda* in *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), the Supreme Court said:

the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody)

that the police should know are reasonably likely to elicit an incriminating response from the suspect.

(footnotes omitted). The Court included within the definition of "incriminating response" any response, whether inculpatory or exculpatory, that the prosecution seeks to introduce. *Id.* at 301 n. 5, 100 S.Ct. at 1690 n. 5 (citing *Miranda*).

On the authority of the statement in *Innis* that words or actions normally attendant to arrest and custody fall outside the definition of interrogation, the government urges that questions incident to routine booking procedures do not constitute interrogation. The theoretical basis of this exception is that the fifth amendment privilege against self-incrimination and the corresponding *Miranda* warnings only prohibit the use of evidence obtained during questioning of an investigatory nature, i.e., questions concerning the crime itself and the suspect's role in it. Under this theory, questioning directed to the administrative processing of those in custody is thus not interrogation of the sort addressed in *Miranda*. *United States v. Morrow*, 731 F.2d 233, 237 (4 Cir.1984); *United States v. Grant*, 549 F.2d 942, 946 (4 Cir.1977), *vacated on other grounds sub nom. Whitehead v. United States*, 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978); *see also Robinson v. Percy*, 738 F.2d 214 (7 Cir. 1984); *United States v. Kane*, 726 F.2d 344 (7 Cir.1984); *United States v. Avery*, 717 F.2d 1020 (6 Cir.1983); *United States v. Booth*, 669 F.2d 1231 (9 Cir.1981); *United States v. Regilio*, 669 F.2d 1169 (7 Cir. 1981), *cert. denied*, 457 U.S. 113, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); *United States v. Prewitt*, 553 F.2d 1082 (7 Cir. 1977); *United States ex rel. Hines v. LeVallee*, 521 F.2d 1109 (2 Cir.1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976); *United States v. Menichino*, 497 F.2d 935 (5 Cir.1974). *But see United States v. Hinckley*, 672 F.2d 115, 122 (D.C.Cir.1982); *Proctor v. United States*, 404 F.2d 819 (D.C.Cir.1968). In *Grant*, we stated, "*Miranda* erects [no]

absolute *per se* bar on any conversation with the accused by the investigating officers after the former has requested counsel. It only inhibits investigative interrogation related to the specific crime itself." 549 F.2d at 946. These cases indicate that whether Taylor's incriminating statements should have been admitted against him depends on whether the questions that prompted the responses were administrative rather than investigatory.[1]

Despite its incompleteness, the record before us contains significant indications that the questions propounded to Taylor may have been investigatory rather than administrative. Taylor's exchange with the police occurred either at the scene of the arrest or en route to the police station, not at the station house as part of routine administrative processing. Moreover, at the time police arrested Taylor, his co-defendant, Stephen Savage, had been in custody for more than one hour, during which he had confessed to the robbery and identified his co-felon as "Snake." Thus, law enforcement officials knew that they were seeking someone called "Snake" when they apprehended Taylor. Taylor testified that, upon his arrest, the police did not merely inquire as to his name but instead told him, "We already know about you. You're from Savannah. We know your name is Snake," to which Taylor assented. If defendant accurately reported the exchange, law enforcement officials were clearly engaged in investigation designed to link Taylor to the crime itself by establishing his identity as Savage's co-felon.

1. I continue to harbor serious doubts about defining interrogation according to a tenuous distinction between administrative and investigatory questioning. *See United States v. Grant*, 549 F.2d 942, 948–50 (1977) (Winter, J., dissenting). If administrative questioning, i.e., routine inquiries as to the name, address, occupation, etc. of a suspect, does not constitute interrogation, it follows that police may engage in such questioning without advising the suspect of his rights to silence or the presence of an attorney. Because such "routine" information may provide the critical link between the suspect and the crime, it is a substantial dilution of the principles established in *Miranda* and carried through into *Edwards* to expect an arrestee, shaken by his arrest, ignorant of his right to eschew conversation with police and without benefit of counsel, to make a careful, considered choice based on the probable consequences of answering seemingly innocent questions. The advice of rights and the right to counsel were designed to redress the imbalance of power between the individual and the state. Departure from a bright line rule threatens that delicate equilibrium.

Moreover, we have never been required to determine whether administrative questioning constitutes interrogation, nor have we done so. *Grant* and *Morrow*, on which the majority relies, both involved situations in which the arrestee himself initiated discussion with the police concerning the crime, volunteering inculpatory statements wholly unrelated to the booking inquiry. *Grant*, 549 F.2d at 945–47; *Morrow*, 731 F.2d at 235, 237. Thus, suggestions in those opinions that routine identification inquiries lie beyond the scope of the *Miranda* safeguards are mere dicta. Similarly, many of the cases in which other circuits have suggested that questions incident to routine booking procedures do not constitute interrogation in fact present instances of defendants' reinitiating conversation and volunteering inculpatory statements. *See, e.g., Robinson*, 738 F.2d at 219; *Kane*, 726 F.2d at 349; *Avery*, 717 F.2d at 1024; *Menichino*, 497 F.2d at 941.

By contrast, the D.C. Circuit has suggested that even routine administrative questions may constitute interrogation expressly prohibited by *Miranda*. In *Proctor v. United States*, 404 F.2d 819 (D.C.Cir.1968), the court ruled inadmissible Proctor's responses to questions regarding his employment, asked in the course of completing a "lineup sheet." Proctor had told the officer that he was unemployed, and then at trial testified that he was at work during the robbery at issue. The court of appeals prohibited the introduction of Proctor's prior statements, citing *Miranda*. More recently, in the prosecution of John Hinckley for attempted assassination, the D.C. Circuit again excluded statements elicited by assertedly routine questioning. While the court did not have to decide whether administrative questioning constitutes interrogation because it found the questions put to Hinckley clearly investigatory, it indicated a willingness to entertain the proposition that booking inquiries following an unfulfilled request for counsel violate *Miranda*. *United States v. Hinckley*, 672 F.2d 115, 122 and accompanying notes (D.C.Cir.1982).

The case before us seems like the situation in *Hinckley* in that the record presents strong indications that the questioning was investigatory. Accordingly, I think it unnecessary to address the question of whether administrative questioning constitutes interrogation. I express my own views of this issue only because the majority discusses it.

Police accounts contain less detail. The FBI agent called to the scene testified that, on the way to Charleston, Taylor "identified himself as Ronald West, also known as Snake." The local police officer testified simply that defendant initially gave a false name. Nothing in the testimony of law enforcement officers indicates the nature of the questions they asked.

The district court did not attempt to determine whether the questions were investigatory because it believed that the *Miranda* protections did not encompass basic identifying information such as name, place of residence and age. Thus, the court inquired no further into the nature and purpose of the questions eliciting Taylor's incriminating statements. As a result, we are called upon to apply constitutional safeguards on the basis of a skeletal record. I can find no support for the majority's assertion that the officers had no expectation that their questions would elicit an incriminating response. Slip op. at 5. Indeed, as I have stated earlier, the present record contains evidence indicating to the contrary. Thus the case is ripe for evidentiary development.

## II.

In my view we should remand this case to the district court to conduct an evidentiary exploration of whether the challenged evidence was elicited by investigatory questioning. If it is found that Taylor gave a false name and gave the alias "Snake" as a result of such questioning, the district court should strike its judgment of conviction and grant Taylor a new trial unless, on the record as a whole, the district court is able to conclude that the admission of unconstitutionally obtained evidence was harmless beyond a reasonable doubt.[2]

**2.** Conceivably we could make this determination ourselves and if we concluded that the error, if any, was harmless beyond a reasonable doubt, we could affirm the judgments. The possibility of harmless error has not been addressed by counsel, and, from my reading of the record, it is not readily apparent to me that any

error was harmless. Taylor had an unlikely explanation for his presence in the woods, the condition of his clothing, etc., but it is not one that I can say with certainty must be untrue. As a consequence, I would leave the question of harmlessness to the district court, where it could be subjected to the adversarial process.