**Clarence BLAIR, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**James L. SUGGS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 21033, 21034.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 7, 1968.

Decided May 2, 1968.

Petition for Rehearing En Banc in No. 21,033 Denied Oct. 10, 1968.

Mr. Y. Hillel Abrams, Washington, D. C. (appointed by this court), for appellant in No. 21,033.

Mr. Frederick H. Walton, Jr., Washington, D. C. (appointed by this court), for appellant in No. 21,034. Mr. J. Richard Carr, Washington, D. C., (appointed by this court), also entered an appearance for appellant in No. 21,034.

Mr. Larry D. Knippa, Sp. Attorney, Office of the United States Attorney, of the bar of the Supreme Court of Texas, *pro hac vice*, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Vic-

tor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee. Mr. James A. Strazzella, Asst. U. S. Atty., also entered an appearance for appellee in No. 21,034.

Before PRETTYMAN, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

These appeals arise out of the armed robbery of a department store. Appellant Blair was convicted of robbery, 22 D.C.CODE § 2901 (1967), and sentenced to from five to 15 years imprisonment. Appellant Suggs, in addition to being convicted of robbery, was also found guilty on three counts of assault with a dangerous weapon, 22 D.C.CODE § 502 (1967), and on one count of carrying a pistol without a license, 22 D.C.CODE § 3204 (1967). He was given consecutive and concurrent sentences totaling 45 years imprisonment. We affirm Blair's conviction, but reverse as to Suggs because his pre-trial statements to the police were admitted in evidence contrary to the teachings of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

I

■ Blair's principal points on appeal relate to the manner in which the trial was conducted and the refusal of the trial judge to allow cross-examination and direct evidence of police brutality offered by the defendants.[1] More specifically, Blair contends that the trial judge unduly intervened in the trial, oppressively criticized defense counsel, and generally by his remarks created an atmosphere of tension which deprived the defendants of a fair trial. While it does appear that some of the trial court's remarks could have been left unsaid, the record does not support the broad claims that defense counsel were in fact intimidated, the affidavits filed by trial counsel notwithstanding. Nor does the record reveal that the trial court's conduct was responsible for the tense atmosphere which pervaded the trial. Rather such tension as did exist was attributable primarily to the fact that a police officer had been killed in attempting to arrest a third person in connection with the robbery. Indeed, the trial court sequestered the jury in order to keep that information from coming to its attention. And it was for this reason also, among others, that the trial court refused to allow cross-examination and direct evidence of alleged police brutality.

■ Blair, joined by Suggs, contends that the disallowed evidence should have been admitted to test credibility and prove bias on the part of the police witnesses. It is of course clear that the range of evidence that may be elicited for the purpose of establishing bias of a witness is quite broad and that accordingly evidence of police brutality is admissible for such purposes.[2] It is also

1. Blair's only other point which requires our attention relates to the trial court's instruction on aiding and abetting. Blair testified on trial that, while he accompanied the robbers to the department store, he did not participate in planning the robbery or in its execution. On appeal he taxes the trial court with failure to instruct the jury that mere presence at, knowledge of, or failure to resist or prevent a crime is not sufficient to establish aiding and abetting. No such instruction was requested and no exception was taken to the charge as given. The charge included:

"Now, a person aids and abets another in the commission of a crime if he knowingly associates himself in some way with the criminal venture with the intent to commit the crime and participates in it as something he wishes to bring about, and seeks by some action of his to make it succeed.

\* \* \* \* \*

"So conduct by a defendant of an affirmative character in the furtherance of a common criminal design, scheme or purpose is necessary."

Under the circumstances, we find the trial court's charge on aiding and abetting sufficient. See Howard v. United States, 128 U.S.App.D.C. 336, 389 F.2d 287 (1967); Long v. United States, 124 U.S.App.D.C. 14, 360 F.2d 829 (1966).

2. 3 J. WIGMORE, EVIDENCE §§ 943–953 (3d ed. 1940). See also C. McCORMICK, EVIDENCE § 40, at p. 86 (1954). For

clear, however, that once a reasonable opportunity to prove bias has been afforded a party, the trial judge has the discretion to control the extent of the proof.[3] In the instant case, it appears that the trial judge believed that admission of evidence of police brutality, through cross-examination or otherwise, would inevitably disclose to the jury the event which prompted any brutality, that is, the fact that a police officer had been killed. Thus, in disallowing the evidence, the trial judge presumably concluded that the probative effect of the impeaching evidence was far outweighed by the potential prejudice to the defendants in disclosing the fact of an officer's death.

Before making his judgment excluding the police brutality evidence, the trial judge commendably took testimony on the issue outside the presence of the jury. Thus he was in a position to balance the weight of that evidence against the prejudice from disclosure to the jury of the policeman's death. As to Blair the trial court's decision to exclude the evidence was undoubtedly correct. Blair testified only to vague recollections of having been "roughed up." Moreover, the police testimony against Blair on the question of guilt was inconsequential considering the weight of the other evidence against him. On this record we cannot say that the trial court abused its discretion as to Blair in excluding the impeaching evidence.

■ The record with respect to Suggs presents quite another picture. On proffer, not only was Suggs able to testify to specific acts of brutality, giving the particulars in a vivid description, but the Commissioner before whom Suggs was brought the day after his arrest testified that Suggs did have certain bruises which even at that time he alleged were the result of police brutality. Moreover, the testimony of police witnesses was primarily concerned with the circumstances under which Suggs was arrested in the alley, and it is this testimony which forms the basis of the Government's case against him. Since, as we have already noted, Suggs' conviction is being reversed on another issue, we need merely state here that on any new trial, if counsel decides to offer the evidence of police brutality, such evidence should be admitted for establishing bias. It may be possible to admit the impeaching evidence while concealing the fact that an officer was killed, but if this cannot be done the choice of opening this field of inquiry rests with counsel for the defendant.

## II

Suggs, in addition to adopting the points raised on appeal by Blair with respect to the manner in which the trial was conducted, raises a series of his own. As we have indicated, the *Miranda* point requires reversal. Since the other points may not appear on retrial, at least not in their present form,[4] it becomes unnecessary to consider them on this appeal.

Suggs' defense consisted of an alibi and an explanation of why he happened to be in the alley where he was arrested after the robbers, on fleeing their getaway car, had run into it. In rebuttal, a police officer was allowed to testify to statements allegedly made by Suggs, after interrogation at police headquarters,

3. cases specifically dealing with evidence of police brutality or illegality admitted for purposes of testing credibility, *see, e. g.*, People v. Dickman, 143 Cal.App.2d Supp. 833, 299 P.2d 30 (Los Angeles County Super.Ct.1956); City of Xenia v. Burton, 70 Ohio Law Abst. 289, 128 N.E.2d 134 (Ohio Ct.App.1953); Churn v. State, 184 Tenn. 646, 202 S.W.2d 345 (1947); Lansdale v. State, 143 Tex.Cr.R. 167, 158 S.W.2d 75 (1942).

3. 3 J. WIGMORE, EVIDENCE § 944. Cases dealing with police officers include State v. Robinson, 24 Wash.2d 909, 167 P.2d 986 (1946); Commonwealth v. Sherman, 294 Mass. 379, 2 N.E.2d 477 (1936).

4. Suggs does raise a serious *Mallory* point, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), not noted on trial. In view of our disposition, we do not notice it on appeal.

which accounted for his activities prior and subsequent to the robbery. The Government concedes that, in obtaining the statements, the procedures required by Miranda[5] were not observed. On brief its only contention in support of the admission of these statements is that Suggs' counsel failed to object to their admission "with adequate clarity."

■■ The record shows that, when the statements were sought to be introduced, defense counsel objected and asked for a bench conference. She then stated:

"MRS. ROUNDTREE: My objection, if it please the Court, is based upon the reason for getting this interrogation, the man wasn't advised of his rights."

After further colloquy with the prosecutor and the court, defense counsel persisted:

"MRS. ROUNDTREE: I think if you are eliciting by the policeman statements from Suggs or any other defendant, there are certain rights—

"THE COURT: * * *

"I'll overrule the objection."

We think that in making her objection counsel said enough to bring the Miranda problem to the court's attention. She did everything but cite Miranda by name and, barring interruption, she might have done that too. In any event, since this is a case tried in 1967, months after the widely publicized ruling in Miranda had been issued and much discussed, we cannot accept the prosecutor's contention on appeal that the trial court was not reasonably apprised of the constitutional claim involved.[6] Where the question is as fundamental as admissibility in a criminal trial of a pre-trial statement by a defendant, counsel may properly assume that even a brief objection presenting the essence of his contention will receive the considered attention of the trial judge without need for a detailed particularization and citations.

■ Here the judge interjected that the defense objection failed to take account that the pre-trial statement was being offered by the prosecution on rebuttal for purposes of impeachment.[7] The Government seeks to sustain that ruling by reference to the Walder[8] line

---

5. See Miranda v. State of Arizona, 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. The fact that the ruling had been well publicized was assigned as a reason for requiring objection by defense trial counsel in United States v. Armetta, 2 Cir., 378 F.2d 658, 661 (1967). We need not consider whether and in what circumstances a Miranda objection may be noticed as plain error on appeal, see Gregory v. United States, 125 U.S.App. D.C. 140, 142 n. 5, 369 F.2d 185, 187 n. 5 (1966). Armetta was a case where the prosecution had a claim that it had met the requirements of Miranda, and the failure of defense counsel to raise the point may have precluded its bringing out the full facts concerning advice given and waiver.

7.
   "MRS. ROUNDTREE: I think if you are eliciting by the policeman statements from Suggs or any other defendant, there are certain rights—

"THE COURT: I think there is misconception. This defendant got on the stand and attempted to account for his whereabouts. He attempted and it may be a valid defense to establish what we call an alibi. On cross examination, for the purpose of impeachment counsel for the government may and I think he did it properly, propound questions to him and if he gave an answer which does not coincide or conform to information the government counsel had from Officer Hannon, he may bring Mr. Hannon back in rebuttal. This goes to the question of his credibility as I explained to the jury.
   "I'll overrule the objection."

8. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The Government's reliance on People v. Kulis, 18 N.Y.2d 318, 274 N.Y.S.2d 873, 221 N.E.2d 541 (1966), is misplaced. The trial in Kulis occurred prior to the decision in Miranda. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

of cases. Apparently the Supreme Court had just such an argument in mind when it stated in *Miranda:*

> " * * * The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used *to impeach his testimony at trial* or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. * * * " 384 U.S. at 476–477, 86 S.Ct. at 1629. (Emphasis added.)

The teaching of *Walder,* however valid in other contexts,[9] appears irrelevant when a *Miranda* problem is presented.[10]

Affirmed as to Blair. Reversed for a new trial as to Suggs.

---

**9.** *Walder,* of course, involved the use for impeachment purposes of evidence that was not directly related to the offense charged and that was seized in violation of the Fourth Amendment. Subsequent lower court cases, however, have extended its rationale to illegally obtained pretrial statements which were directly related to the offense charged. *See, e. g.,* Inge v. United States, 123 U.S.App.D.C. 6, 365 F.2d 345 (1966); Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960). On the other hand, the Supreme Court has recently demonstrated its intention to discourage any such whittling away of rights. *See* Simmons

v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968), wherein the Court held that a defendant's testimony in support of a motion to suppress evidence on Fourth Amendment grounds may not be admitted against him at trial on the issue of guilt.

**10.** *See* State v. Brewton, Or.Sup.Ct., 422 P.2d 581, *cert. denied,* 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967). *See also* Note, The Impeachment Exception to the Exclusionary Rules, 34 U.Chi.L.Rev. 939 (1967). No case has been cited and we have found none holding the principle applied in *Walder* applicable in *Miranda* situations.