[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12192

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20844-DLG-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TOM MAURICE JONES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 22, 2012)

Before HULL and FAY, Circuit Judges, and WALTER,* District Judge.

PER CURIAM:

---

* Honorable Donald E. Walter, United States District Judge for the Western District of
Louisiana, sitting by designation.

Following a jury trial, Tom Jones ("Jones") appeals his conviction of being a felon in possession of a firearm that moved in interstate commerce, in violation of 18 U.S.C. § 922(g). On appeal, Jones posits several arguments,[1] although only one merits discussion: whether the district court deprived him of his constitutional right to challenge the bias of government witnesses, via the introduction of extrinsic evidence. For the reasons set forth below, we find no error.

I.

On November 19, 2010, a federal grand jury returned a one-count indictment alleging that Jones—a convicted felon—knowingly possessed a firearm and ammunition that moved in interstate commerce, in violation of 18 U.S.C. § 922(g)(1) and § 924(e). Jones's trial was held in February 2011. At trial, the three officers involved in Jones's arrest testified to the following facts.

On December 19, 2009, Officers Silvio Guzman ("Guzman"), Jose Galvez

---

[1] For example, Jones argues the following: (1) 18 U.S.C. § 922(g) is unconstitutional on its face and as applied to his case because it criminalizes the intrastate possession of a firearm without requiring a substantial effect on interstate commerce, in violation of the Commerce Clause; (2) 18 U.S.C. § 922(g) violates the Tenth Amendment; and (3) his sentence violates his Fifth and Sixth Amendment rights, where his maximum sentence was increased based upon convictions that were neither alleged by indictment nor proven to the jury. Because we have already held that § 922(g) does not violate the Commerce Clause or the Tenth Amendment, we need not address the first two of these arguments again. United States v. Dupree, 258 F.3d 1258, 1259-60 (11th Cir. 2001); Hiley v. Barrett, 155 F.3d 1276, 1277 (11th Cir. 1998), aff'g, Nat'l Ass'n of Gov't Emps., Inc. v. Barrett, 968 F. Supp. 1564 (N.D. Ga. 1997). Likewise, Jones's argument that his sentence was imposed in violation of his Fifth and Sixth Amendment rights is foreclosed by Supreme Court precedent. See Almendarez-Torres v. United States, 523 U.S. 224, 246-47 (1998).

("Galvez"), and George Guillen ("Guillen") were patrolling the City of Miami, when they each received a report of an individual suspected of burgling cars in the area of Northeast 1st Avenue and 13th Street. Officer Guzman was the first to arrive at the location, where he immediately observed Jones on a bicycle. Although Jones did not match the description of the suspect that had been the subject of the report, Guzman became suspicious when he observed Jones peering into the driver's side window of each car that he passed. Therefore, Guzman pulled up to Jones in his patrol car. When Jones noticed Guzman approaching, he immediately fled on his bicycle. At this same time, Officers Galvez and Guillen arrived at the scene and joined Guzman in his pursuit of Jones.

During the chase, Jones caught his bicycle on a metal fence, hit a building's concrete wall, and fell off of his bicycle. He continued to elude the officers on foot. Guzman, pursuing in his patrol car, observed Jones holding the front of his pants, before briefly losing sight of him. Nevertheless, Galvez and Guillen continued to pursue Jones on foot.

Near the end of the chase, Galvez observed Jones holding a black object in his hand, throw it underneath a white vehicle, and heard the sound of metal hitting and sliding across concrete. Guillen also observed Jones lean towards the vehicle

3

and throw an object underneath it.[2] Immediately thereafter, Jones surrendered and was taken into custody by Galvez and Guillen. It was only then that Guzman arrived at the location of the arrest. Together, the three officers began searching for the object that had been tossed beneath the vehicle. During the search, Galvez found a firearm underneath the white vehicle, which was only a couple of feet from where Jones had been taken into custody.[3]

After the conclusion of the three officers' testimony, the parties stipulated that Jones had been previously convicted of a crime punishable by imprisonment for a term exceeding one year and had never received restoration of his federal firearms privileges. The government then rested.

Before the presentation of its case, the defense informed the government of its intention to offer three pieces of evidence counsel claimed demonstrated that, while the officers apprehended Jones, they broke two of his ribs and knocked out

---

[2] On cross-examination, the defense attempted to impeach Guillen with inconsistencies between his trial testimony and earlier statements he had made to a federal agent. For example, the defense questioned Guillen as to whether he had previously stated that he had not observed Jones throw an object. The defense showed Guillen a prior statement that he had made to a federal agent, stating that he was unable to see Jones throw an object under a vehicle. Guillen indicated that he had made the statement before reviewing the report made by the arresting officer. Of course, assessing Guillen's credibility was a matter for the jury.

[3] On cross-examination, the defense, in an attempt to impeach Galvez as to his bias and motive for testifying, questioned whether the officers kicked Jones, punched him in the face, and knocked out two of his teeth. Galvez denied such allegations.

two of his teeth.  Jones proffered a description of the evidence he sought to introduce: (1) his mug shot photograph, taken at the time of his post-arrest booking on December 19, 2009; (2) the videotape of his bond hearing on December 20, 2009; and (3) the testimony of a nurse who participated in Jones's treatment two weeks after he was taken into custody, and who Jones informed that the officers had assaulted him during his arrest.[4]  The cumulative effect of the evidence, the defense argued, was to support Jones's theory that the officers were biased against him because they had assaulted him during his arrest, only planting the firearm on him to avoid scrutiny for their own actions.

The government moved in limine to preclude the admission of this evidence.  In part, the government argued that the offered evidence was not relevant to whether Jones possessed a firearm.  Additionally, the government proffered contravening evidence.  For example, the government showed that Jones did not complain of any injury to the intake corrections officer after the arrest, and also that he did not observe any injuries to Jones at that time.  In response, Jones argued that the evidence was relevant because it undermined the officers'

---

[4]  Although neither the mug shot nor the bond hearing video illustrated Jones's alleged missing teeth or broken ribs, Jones argued to the district court that the mug shot showed swelling on the right side of Jones's face and that the bond hearing video showed Jones limping and clutching the right side of his body.  After viewing the mug shot, the trial judge found that, if there was any swelling to Jones's face, it was slight.  The judge made no comment as to the bond hearing video.  However, the court sought a basis for allowing the evidence but could find none.

credibility. The district court granted the government's motion, ruling that, in the absence of a sufficient foundation, Jones's allegations were inadmissible. Additionally, the court found that the evidence was not relevant to any of the elements of the charged offense.

Following the exclusion of this evidence, the defense rested. Thereafter, the jury found Jones guilty of possession of a firearm and ammunition by a convicted felon. This appeal follows.

## II.

"We review a district court's evidentiary rulings under the abuse of discretion standard." United States v. Todd, 108 F.3d 1329, 1331 (11th Cir. 1997) (citations omitted). Similarly, we review "a trial court's ruling on the relevance of evidence under the abuse of discretion standard." Id. at 1332 (citation omitted). "Such discretion does not, however, extend to the exclusion of crucial relevant evidence necessary to establish a valid defense." Id. (citations omitted); see also United States v. Baptista-Rodriguez, 17 F.3d 1354, 1364 (11th Cir. 1994).

## III.

Jones argues that the district court abused its discretion and violated his constitutional right to present a defense by granting the government's motion in limine to exclude evidence of the alleged injuries that he sustained during his

arrest.  Specifically, Jones contends that bias evidence is inherently relevant to his defense, which was that the officers assaulted him and provided false testimony about his possession of the firearm, only to avoid official scrutiny for their abusive actions.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. 45, 52 (1984).  Nevertheless, proof of bias must be relevant and is inherently subject to the same limitations that accompany the introduction of other evidence.  Cf. United States v. Arias-Izquierdo, 449 F.3d 1168, 1178 (11th Cir. 2006) (noting limitations during cross-examination for bias in the context of "confusion of the issues or interrogation that is repetitive or only marginally relevant"); United States v. Novaton, 271 F.3d 968, 1006 (11th Cir. 2001) (noting that cross-examination of a witness regarding potential bias must be relevant).

Reviewing all of the evidence in this case, we find that Jones's proffered

evidence was properly excluded by the district court. On the basis of an indeterminate picture and video, Jones sought to argue that the officers caused his injuries by assaulting him. However, this evidence is wholly inadequate to connect Jones's injuries to the arresting officers. Without a predicate, the mug shot photograph and bond hearing video only demonstrated that Jones may have suffered injuries, without establishing the time or source of those injuries. Jones's attempt to ascribe these injuries to the officers was not supported by any other evidence at trial. For example, Jones did not testify to how he sustained his injuries; nor did he call third party witnesses to explain the source of those injuries. In fact, the only evidence that was related to any injuries was the testimony of the officers describing Jones fleeing on the bicycle, hitting the fence, and being knocked into a concrete wall. Therefore, the district court did not abuse its discretion in excluding Jones's proffered evidence of his mug shot and bond hearing videotape. Cf. Arias-Izquierdo, 449 F.3d at 1180 (finding the district court did not abuse its discretion in excluding questions concerning bias).[5]

---

[5] Jones relies on McDonald v. United States, 904 A.2d 377, 380-81 (D.C. 2006), to argue that the proffered evidence was a relevant source of bias. Obviously, McDonald is not binding on this Circuit. Furthermore, McDonald is distinguishable. There, the defendant testified that officers assaulted him during his arrest, but he was precluded from testifying to certain injuries he received. McDonald, 904 A.2d at 379-380. The District of Columbia Court of Appeals found that the trial court was mistaken in viewing the evidence as irrelevant. Id. at 381. Unlike McDonald, here no connection was established between Jones's injuries and the officers, and the district court did not preclude Jones from testifying to how he sustained his injuries.

Furthermore, Jones's proffer of the testimony of the nurse, who participated in Jones's treatment two weeks after he was taken into custody, was also properly excluded. Given the delay between Jones's arrest and his statement to the nurse, the district court was within its discretion to conclude that the evidence was insufficient to support a finding that the injuries occurred at the time of the offense. See, e.g., Todd, 108 F.3d at 1331 (stating that evidentiary rulings are reviewed under the abuse of discretion standard). Additionally, the Federal Rules of Evidence likely would have barred the nurse from repeating Jones's allegations that the officers had caused his injuries as inadmissible hearsay. Cf. United States v. Taylor, 417 F.3d 1176, 1181 (11th Cir. 2005) (holding that the district court properly excluded a physician's testimony that the defendant told her police officers had caused his injuries because the evidence was irrelevant to whether the defendant possessed a firearm); Fed. R. Evid. 803(4) advisory committee's notes (explaining that statements as to fault would not qualify as admissible hearsay under Rule 803(4)).

As a result, Jones's argument that his constitutional rights were violated also necessarily fails. See, e.g., United States v. Anderson, 872 F.2d 1508, 1519 (11th Cir. 1989) ("[I]t is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible

9

evidence."). The district court did not preclude Jones from questioning the credibility of the officers. For example, the district court permitted Jones to cross-examine Guillen as to whether he kicked Jones, punched him in the face, or knocked out two of his teeth. Although Guillen denied such allegations, Jones was not prevented from testifying to how he sustained his injuries and explaining that his injuries were not caused by falling from his bicycle. Nor did the court prevent Jones from questioning the other officers about the source of his injuries. Had Jones testified or called other witnesses to explain the source of his injuries, the necessary predicate may have been sufficient to question the credibility of the officers via the introduction of the three proffered pieces of evidence. Without something to support the argument being put forward, however, there is simply no basis or link making the evidence relevant or admissible. Accordingly, the exclusion of this evidence did not violate Jones's constitutional rights. See Baptista-Rodriguez, 17 F.3d at 1371.

## IV.

For the foregoing reasons, the conviction and sentence are affirmed.

**AFFIRMED.**