UNITED STATES of America,
Appellant,

v.

Andre J. P. DODIER, Appellee.

No. 79–5059.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1980.
Decided Sept. 23, 1980.

Robert F. McDermott, Jr., Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., Carolyn W. Brickley, Third Year Law Student on brief), for appellant.

Daniel M. Preminger, Philadelphia, Pa., on brief, for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and KIDD *, District Judge.

SPROUSE, Circuit Judge:

The defendant, Andre J. P. Dodier, was indicted for unlawfully importing cocaine (21 U.S.C. §§ 952(a), 960), possessing cocaine with intent to distribute (21 U.S.C. § 841(a)(1)), and for violating a section of the Travel Act (18 U.S.C. § 1952(a)(3)). Two hearings were held on defendant's pre–trial motion to suppress, and the district court suppressed testimonial evidence of two oral confessions as being involuntarily made. The government appeals pursuant to 18 U.S.C. § 3731, certifying that the suppressed evidence constitutes substantial proof of the charges against the defendant. We reverse and remand.

United States Customs officials at the Dulles International Airport discovered approximately seven pounds of cocaine concealed behind a ceiling panel in the rear–port lavatory on a Braniff aircraft during a routine search of the aircraft. The aircraft had arrived at the Virginia airport following an international flight originating in Lima, Peru.

A special agent for the Drug Enforcement Administration (DEA) and a customs agent were assigned to surveil the continuation flight from Dulles Airport to the John F. Kennedy Airport in New York. Dodier and a female acquaintance were on that flight and re–boarded the plane when it resumed its scheduled flight to J.F.K. The only information then available to the agents was a list of the names of the passengers and the fact that seven pounds of cocaine were concealed in one of the lavatories.

Dodier and his female companion called attention to themselves immediately. As

---

* Honorable William Matthew Kidd, United States District Judge for the Southern District of West Virginia, sitting by designation.

the flight commenced, they nervously watched the persons approaching the three restrooms in the rear of the plane. Dodier went twice to the lavatory containing the concealed cocaine. Once he waited to use that lavatory when the other two were clearly vacant and available for use. While this was happening, Dodier's female companion knelt in her seat facing the lavatories in the rear of the plane. Dodier and his companion became the prime suspects.

One of the agents exited the plane upon landing at J.F.K. Airport and consulted with local customs agents. As the passengers disembarked, this agent, unaware that the cocaine had not been removed from the aircraft, pointed out to waiting customs officials seven persons who had used the lavatory containing the cocaine or who had been in contact with Dodier on the flight so that the narcotics might have been transferred to them. These persons, including Dodier, were stopped by an unidentified agent who requested them to take a seat in the lounge area. Dodier was approached by a special DEA agent who identified himself and requested Dodier's name and passport. These were furnished and were in proper order. Dodier was then directed to a seating area some ten to twelve feet away from the other passengers so they could speak with more privacy. The agent advised him of his *Miranda* rights and informed him that he was investigating an attempt to smuggle cocaine into the United States. He said Dodier was suspected and asked from whom the cocaine was obtained and to whom it was to be delivered. Dodier, without more, confessed involvement in the cocaine smuggling but asserted that his female companion was in no way involved. This occurred at approximately twelve noon, a few minutes after the plane had landed.

Dodier was then arrested and taken to a DEA office located within the airport. *Miranda* warnings were given again and Dodier signed a *Miranda* waiver of rights form. He again admitted his involvement to the same DEA agent to whom he had previously confessed. Shortly thereafter he asserted his right to remain silent, refused to sign a written confession, and the interview was terminated. Later that same afternoon, after fingerprinting and administrative processing, Dodier was taken to a United States magistrate.

Dodier denied at the second suppression hearing that he had used the lavatory containing the cocaine—saying he had used a different one. He denied staring at persons using the aircraft's lavatories or in any way acting in a suspicious or unusual manner. His female companion did not testify. He said a special agent at the J.F.K. Airport approached him, searched his hand luggage, took him bodily aside, and told him that an informant had advised of his involvement in the smuggling attempt. According to Dodier, he was told "they" had a warrant for his arrest, was shown a piece of paper with his name typed on it, and was warned if he refused to confess his female companion would be thrown in jail and probably raped there. He explained this was the reason he invented the quick confession. He said he thought he had no choice in signing the waiver form, believing his signature made no difference. The special agent who conducted the questioning emphatically denied all the allegations of misconduct attributed to him.

Dodier contends that the initial investigatory stop was not lawful, that the law enforcement authorities exceeded their power by detaining and questioning him, and that his statement was the result of an illegal arrest under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The government argues that the district court's finding that the confession was involuntary is clearly erroneous.

▉ The investigative stop of Dodier was constitutionally permissible. It is well established that a police officer under appropriate circumstances may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The minimal

intrusion on privacy rights by an investigative stop is permissible if "the police officer [can] point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880. This Circuit has recognized and applied these principles in numerous cases. *See, e. g., United States v. Constantine*, 567 F.2d 266 (4th Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1492, 55 L.Ed.2d 520 (1978); *United States v. Bull*, 565 F.2d 869 (4th Cir. 1977), *cert. denied*, 435 U.S. 946, 98 S.Ct. 1531, 55 L.Ed.2d 545 (1978).

Dodier was a passenger on a flight originating from Lima, Peru, which carried seven pounds of hidden cocaine. Thus the agents knew someone was committing a serious narcotics offense. The trial court resolved factual issues concerning Dodier's conduct against him. The conduct of Dodier and his companion during the flight provided the basis for a reasonable suspicion of his involvement.

█ The stop was conducted in a reasonable manner and was of a very brief duration. The defendant was not frisked and, in fact, the agent took steps to ensure other passengers would not be aware of his being questioned concerning a criminal matter. The modest intrusion on the privacy rights of the defendant was more than outweighed by the substantial public interest in the detection and elimination of drug smuggling. Moreover, the interviewing agent, before questioning, expressly informed the defendant of his *Miranda* rights, which he indicated he understood. Having ruled the initial stop constitutionally proper, we also conclude defendant's confession afforded the agents probable cause to make the arrest. Defendant's oral statements were therefore not tainted by an illegal stop and arrest.

The trial court made no separate findings of fact and conclusions of law. Its single sentence order granted the motion to suppress the confessions for reasons stated from the bench. The trial court's reasons are evinced in its colloquy with counsel and dispersed through over thirty pages of the record. The trial court appeared to be primarily concerned with the investigative procedures employed by the agents. It felt they should have taken the names and addresses of other passengers; that they should have been "wired" when talking to Dodier; and that two agents should have been present. The court discredited Dodier's testimony, however, and for the most part accepted the agents' version of occurrences on the Braniff flight from Washington to New York.

The court was highly skeptical, however, that Dodier or any suspect would voluntarily confess soon after confrontation by an agent. The trial court was also especially concerned that Dodier was interrogated prior to his presentment to a United States Magistrate. Indeed it appears that the district court ruled the confession "involuntary" primarily because the accused was not taken "forthwith" to the nearest United States magistrate before questioning at the DEA office.

The trial court did not discuss whether the manner of detention and interrogation deprived Dodier of the mental freedom and capacity for self–determination that would make the confession involuntary. It apparently considered, however, that faulty investigative techniques and interrogation by a single agent before presentation to a magistrate as the "totality of circumstances" affecting voluntariness of Dodier's confession.

█ The voluntariness of a confession depends on whether it is a "product of an essentially free and unconstrained choice by its maker," or whether, instead, the maker's "will has been overborne and his capacity for self–determination critically impaired," *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). "In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances–both the characteristics of the accused and the details of the interrogation." *Id.* at 226, 93 S.Ct. at 2047. *See United States v. Clark*, 499 F.2d 802 (4th Cir. 1974); *Hall v. Ward-*

en, Maryland Penitentiary, 313 F.2d 483 (4th Cir. 1963).

■ The government has the burden of proving a confession's voluntariness by a preponderance of the evidence at a pre–trial suppression hearing. United States v. Johnson, 495 F.2d 378, 382–83 (4th Cir.), cert. denied, 419 U.S. 860, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974).

■ Although an appellate court must determine independently the ultimate issue of voluntariness, Beckwith v. United States, 425 U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976); United States v. Lewis, 528 F.2d 312 (4th Cir. 1975), the findings of the district court as to the facts surrounding the confession are to be accepted unless clearly erroneous. United States v. Lewis, supra.

■ The district court's resolution of the credibility issues are fully supported by the record. Its conclusion that the totality of the circumstances proved the confession involuntary, however, was clearly erroneous. We are convinced the government met its burden of proving by a preponderance of the evidence that the confessions were voluntarily made. They were not the product of coercion, threats or improper inducements.

Dodier was carefully informed of his Miranda rights when he was first stopped. This was not required, but he indicated that he understood them. After being placed under arrest at the passenger lounge, he was taken to a local DEA office and, again, carefully advised of his Miranda warnings. He understood his rights and signed a written waiver of rights form. Dodier terminated the interview a short time later and refused to submit to further questioning. The defendant's exercise of this right is compelling evidence that he was aware of his rights and spoke freely and voluntarily during both interviews. His request to terminate questioning was scrupulously honored by the authorities. The only evidence in the entire record suggestive of improper coercion is Dodier's own testimony. This was completely discredited by the district court.

■ Although there may have been more efficient and effective ways to have conducted the interviews, there is no constitutional or legal requirement that interrogation follow a particular format. United States v. Robinson, 593 F.2d 573 (4th Cir. 1979); United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968). Moreover, there can be no doubt that testimonial evidence of an oral confession is legally admissible. Harris v. Riddle, 551 F.2d 936 (4th Cir.), cert. denied, 434 U.S. 849, 98 S.Ct. 160, 54 L.Ed.2d 118 (1977); United States v. Grant, 549 F.2d 942 (4th Cir.), cert. denied, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977). Although delay in promptly presenting the accused to a magistrate is a significant factor bearing on the voluntariness issue, the delay involved in this case was of a relatively short duration. The oral statements were both made within approximately one hour after Dodier disembarked from the airplane at the J.F.K. Airport. Dodier's statements could not possibly be subject to the six–hour exclusionary rule established by 18 U.S.C. § 3501(c), nor are there any circumstances which, when added to the short delay, would indicate that the statements were involuntarily made.

The judgment appealed from is therefore reversed and the case remanded to the district court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*