**UNITED STATES of America,**

v.

**Omar Fabian Valdes GUALTERO,
Defendant.**

Case No. 1:13–cr–00310–GBL–2.

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Nov. 24, 2014.

Michael Ben'ary, Stacey K. Luck, U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

This matter is before the Court on Defendant Omar Fabian Valdes Gualtero's Motion to Suppress Statements ("Motion to Suppress") (Doc. 106). On July 18, 2013, a federal grand jury returned an indictment charging Defendant Gualtero and five of his co-defendants with (1) murder of an internationally protected person and aiding and abetting that murder in violation of 18 U.S.C. §§ 2, 1116(a), (c); (2) conspiracy to kidnap an internationally protected person in violation of 18 U.S.C. § 1201(c); and (3) kidnapping an internationally protected person and aiding and abetting that kidnapping in violation of 18 U.S.C. §§ 2, 1201. A seventh co-defendant was charged with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c). *See* Doc. 15.

Defendant moves to suppress his pre-arrest and post-arrest statements because he alleges his statements were made involuntarily, without a knowing and intelligent

waiver of his *Miranda* rights, and because the United States law enforcement officials failed to create a contemporaneous video or tape recording of his statements when recording equipment was easily accessible to them (Doc. 106).

The first issue before the Court is whether Defendant made a knowing, voluntary and intelligent waiver of his *Miranda* rights where he signed the Spanish language *Miranda* rights waiver forms. The second issue is whether Defendant's constitutional rights were violated when the United States law enforcement agents failed to record Defendant's pre-arrest and post-arrest statements.

The Court denies Defendant's Motion to Suppress because the Government has demonstrated, by a preponderance of evidence, that Defendant's post-arrest statements were made voluntarily, after a knowing and intelligent waiver of his *Miranda* rights which is demonstrated by testimony and by Defendant's signature at the bottom of the waiver forms. Additionally, Defendant's constitutional rights were not violated when the United States law enforcement agents failed to make a contemporaneously recording of his pre-arrest and post-arrest statements because a video or tape recording of Defendant's interrogation and statements is not constitutionally required.

## I. Background [1]

The indictment alleges the following: Defendant along with five of his co-defendants were involved in a scheme to commit "millionaire's rides" in Bogota, Colombia. On June 20, 2013, defendants targeted DEA Special Agent James Terry Watson ("SA Watson"). At approximately 11:00 p.m., SA Watson left a restaurant in Bogo-

ta, where he had been dining with Drug Enforcement Agency ("DEA") and international law enforcement colleagues. SA Watson hailed a taxi ("Taxi #1") in the Parque 93 area of Bogota, a popular and affluent neighborhood known for high-end dining and shopping establishments. Defendant Garcia Ramirez drove Taxi #1. Once SA Watson entered Taxi #1, Garcia Ramirez engaged SA Watson in conversation in Spanish and determined that SA Watson was seeking a ride to the Marriott Hotel in Bogota. As soon as Taxi #1 began to travel, a second taxi ("Taxi #2"), driven by Defendant Lopez, pulled up behind Taxi #1. Defendants Figueroa Sepulveda, Bello–Murillo, and Gualtero were riding in Taxi #2. A third taxi ("Taxi #3") was originally part of the robbery crew, but the taxi encountered mechanical problems shortly before Taxi #1 picked up SA Watson. The defendants intended for the driver of Taxi #3 to obtain the victim's automatic teller machine ("ATM") and credit cards, and take them to the ATM to withdraw cash from the victim's bank accounts using Personal Identification Numbers (PINs).

After a short drive, Defendant Garcia Ramirez alerted the other defendants that SA Watson would their next robbery victim. Using a previously agreed upon signal, Defendant Garcia Ramirez alerted his co-defendants by pumping the brakes of his taxi to act as if it were experiencing engine trouble. Defendant Lopez confirmed his understanding of the plan by flashing the headlights of his car. Taxi #1 then came to a stop, and Taxi #2 pulled up directly behind it. Defendants Figueroa Sepulveda and Bello–Murillo got out of the back seat of Taxi #2 and got into the back seat of Taxi #1, one on each

1. The factual background is taken directly from the Government's Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 404(B) and Supporting Memorandum (Doc. 138).

side of SA Watson. Defendant Figueroa Sepulveda used a stun gun in an attempt to incapacitate SA Watson, and SA Watson struggled. During the fracas, Defendant Bello–Murillo stabbed SA Watson several times with a knife.

SA Watson was able to break free but collapsed a short distance later. Colombian National Police officers arrived soon thereafter and placed SA Watson in their vehicle. They took him to the hospital, where he was pronounced dead shortly thereafter. The cause of SA Watson's death was blood loss as a result of multiple stab wounds.

## II. Standard of Review

 The legal standards governing a motion to suppress are clear. The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."). Where a defendant seeks to suppress a statement under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Matlock*, 415 U.S. at 178, 94 S.Ct. 988.

In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law.

*United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir.1993); *see also Columbus–Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir.1995) ("In the usual case, the fact finder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.").

## III. Suppression Hearing

The Court held an evidentiary hearing on October 6, 2014. Having heard the testimony of the witnesses and considered the demeanor and credibility of the witnesses, the Court renders the following findings of fact and conclusions of law.

DEA Special Agent Jose Ramirez ("SA Ramirez") testified that on June 25, 2013 he and two other United States law enforcement agents, Special Agent Jessie Thorpe ("SA Thorpe") and Special Agent John Prada ("SA Prada") met with Defendant in an office at the Directorate of Criminal Investigation and Interpol ("DIJIN"), a division of the Colombian National Police. All three agents are fluent Spanish speakers. The agents were dressed in plain clothes, and were unarmed. The office, which was assigned to a Colombian National Police official, had glass walls and a glass door. This office was not typically used for conducting interviews and was not equipped with suitable recording equipment. During the meeting, there were no Colombian National Police personnel in the room. Defen-

dant was brought into the room in hand-cuffs, but those handcuffs were removed during the interview.

At the outset of the interview, SA Ramirez testified that he advised Defendant of his *Miranda* rights, both orally and in writing using a Spanish language form. *See* Government's Exhibit C. Defendant read the form aloud, confirmed verbally that he understood those rights, and signed the waiver, indicating that he wished to proceed with the interview. At the conclusion of the interview, Defendant agreed to meet again to answer additional questions. The interview lasted approximately two hours. SA Ramirez testified that Defendant did not request an attorney at any time during the interview. Although not indicated in SA Ramirez's report, Defendant took at least one break during the interview to use the restroom.

On June 27, 2013, SA Ramirez, SA Thorpe and SA Prada met with Defendant in a conference room at DIJIN headquarters. This conference room contained typical conference room furniture, including a large table and chairs, and glass walls. According to the Government, this room was not typically used for interviews and was not equipped with suitable recording equipment. The three agents were dressed in plain clothes and were unarmed. Defendant was not handcuffed or otherwise restrained during the interview.

At the start of the interview, SA Ramirez testified that he advised Defendant of his *Miranda* rights, both orally and in writing using a Spanish language form. Defendant verbally confirmed that he understood his rights, read the Spanish language form for himself, and signed the waiver, indicating that he wished to proceed with the interview. *See* Government's Exhibit D. At no time before or during the interview did Defendant request an attorney. This interview lasted

approximately one hour and twenty minutes. At the end of the interview, SA Ramirez gave Defendant his cell phone number. Defendant agreed to call with any new information not previously discussed. SA Ramirez testified that Defendant contacted SA Ramirez on his cell phone numerous times to express his desire to continue to cooperate with law enforcement in this case.

Defendant testified that he is a 27 year-old high school graduate who was formerly a Colombian police officer. Defendant was released from his position as a police officer because he had been implicated in an armed robbery. He testified that he was brought to DIJIN headquarters to meet with law enforcement agents and he was not provided with food or water. Defendant conceded that he was questioned in an office with glass walls and a glass door. Defendant testified that SA Ramirez gave him a document and explained it to him, but that SA Ramirez did not read the document aloud to him. Defendant denies that SA Ramirez told him that he had the right to an attorney or the right to remain silent. Instead, Defendant stated that SA Ramirez told him that that the United States government is not required to provide him with an attorney in Colombia, but that he would get an attorney in the United States if he was later transported there. Defendant understood that at the time of the arrest he was a suspect in the murder of SA Watson. Defendant noted, however, that it was uncommon for Colombian police officers to question individuals who had been placed under arrest.

Defendant acknowledged that he signed the Spanish language forms before the interviews commenced, but denied that he had read the forms prior to signing them. Defendant stated that SA Ramirez told him that he could get the death penalty for the offense of murder, but if he cooperated

with the agents, SA Ramirez would talk with the United States prosecutor to see if there was a possibility of avoiding prosecution in United States. Defendant testified that he wanted to avoid being prosecuted in the United States so he did his best answer the law enforcement agents' questions as he feared for his life.

Defendant testified that during the course of the interview a law enforcement agent wearing a red shirt and black pants removed a nine-millimeter Glock handgun from his holster. Defendant stated that the agent placed the weapon in front of him with the barrel facing toward him. Defendant was familiar with this particular weapon due to his years of experience as a police officer in Colombia. The agent who placed the weapon before Defendant did not make any verbal statements or non-verbal gestures toward Defendant. Defendant testified that the weapon remained on the table in front of him for two to three minutes while he was questioned. The law enforcement agent then re-holstered the weapon. Defendant stated that the law enforcement agents did not raise their voices, use profanity or otherwise verbally or physically threaten him. Rather, Defendant was fearful because he was aware of the media attention surrounding the murder of SA Watson. Defendant stated that he had previously watched a television show on the Discovery Channel where United States police officers shot suspects. Additionally, Defendant was afraid of the prospect of being transported to the United States for prosecution of the murder of an American law enforcement agent. He was devastated about the possibility of being taken away from his family.

Defendant contends that his Fifth Amendment rights were violated when the United States law enforcement agents refused his access to counsel and did not stop questioning him when he asked for counsel. Additionally, Defendant contends that his *Miranda* rights were not read entirely in Spanish. Defendant argues that his statements were involuntary because he felt his life was in danger when, during the course of the interview, one of the agents placed a weapon on the table between him and the interrogators.

The Government argues that Defendant's statements were made voluntarily as Defendant was informed of his *Miranda* rights in English, Spanish, and in writing at each interview with United States law enforcement agents on June 25, 2013 and June 27, 2013. The Government attacks Defendant's claims that his statements were verbally and physically coerced because the interviews were conducted in rooms with glass walls and doors, and none of the three agents were armed. Finally, the Government contends that there is no constitutional requirement that custodial interviews be recorded in order to be admissible.

## IV. Analysis

The Court denies Defendant's Motion to Suppress because the Government has demonstrated, by a preponderance of evidence, that Defendant's post-arrest statements were made voluntarily, after a knowing and intelligent waiver of his *Miranda* rights which is demonstrated by the evidence. Additionally, Defendant's constitutional rights were not violated when the United States law enforcement agents failed to make a contemporaneous recording of his pre-arrest and post-arrest statements because a video or tape recording of Defendant's interrogation and statements is not constitutionally required.

### A. Validity of Miranda Waiver

The validity of a waiver of *Miranda* rights depends on whether the waiver was both voluntarily, and knowing-

ly and intelligently made. The Government has the burden of proving the existence of both elements by a preponderance of the evidence. *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir.2005). More specifically, the validity of a waiver depends on whether: (1) "relinquishment of the right ... [was] 'voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception;'" and (2) "'waiver ... [was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Cristobal*, 293 F.3d 134, 139–40 (4th Cir. 2002) (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). Only if under the "totality of the circumstances" both distinct elements are shown to exist "may a court properly conclude that the *Miranda* rights have been waived." *Id.* at 140.

### 1. Voluntariness Element of *Miranda* Waiver

■ The essential inquiry under *Miranda's* voluntariness requirement is "'whether the defendant's will has been 'overborne' or his capacity for self-determination critically impaired.'" *Cristobal*, 293 F.3d at 140 (citation omitted). In examining this element, the court "must consider ... the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.*

■ A statement will only be deemed involuntary if there is a showing of "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir.1997). Instead, the dispositive factor in a voluntariness inquiry "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071–72 (4th Cir.1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *see also United States. v. Dodier*, 630 F.2d 232, 235–36 (4th Cir.1980) (evaluating the voluntariness of a confession based on whether it is the "product of an essentially free and unconstrained choice by its maker."). When evaluating voluntariness the court should look to "the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Hasan*, 747 F.Supp.2d 642, 658–59 (E.D.Va.2010) (quoting *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir.1980)). The Supreme Court has noted the following factors are relevant in determining the voluntariness of a statement: the youth of the accused; a lack of education; low intelligence; lack of any advice to the accused of his constitutional rights; the length of detention; repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041. The Fourth Circuit in *Braxton* suggests that courts consider whether the suspect was deprived of anything, and whether the officers used deception. *Braxton*, 112 F.3d at 784–85.

■ Defendant contends that his statements were not voluntary because he was subject to "psychological coercion and additional factors" when his statements were taken (Doc. 107). Specifically, Defendant states that the interview took place in a small room, and one of the United States law enforcement agents removed his firearm from his holster and placed on the

table directly in front of Defendant. *Id.* Additionally, Defendant claims that upon requesting counsel, he was told that he was not entitled to an attorney unless he was in the United States. *Id.*

Considering the totality of the circumstances, the Court does not find that Defendant's will was overborne or his capacity for self-determination was critically impaired so as to render his waiver or statements involuntary. The Court finds that Defendant, a high school graduate and former Colombian police officer, was capable of understanding the nature of his rights and the consequences of waiving them. Defendant testified that he cooperated because he feared being separated from his family, and he was motivated to cooperate to avoid the death penalty. Defendant was taken to Colombian police headquarters where the interviews took place. Both interviews lasted two hours or less, and took place in an office and conference room with glass walls and a glass door. SA Ramirez testified that Defendant's handcuffs were removed before the interviews commenced, and that Defendant remained unrestrained during the interviews. SA Ramirez also testified that Defendant was provided a bottle of water and given at least one bathroom break. Defendant acknowledged that the law enforcement agents did not raise their voices, use profanity or otherwise verbally or physically threaten him.

The Court finds Defendant's claim that the United States law enforcement agents placed a weapon on the table during Defendant's interviews is not credible. Despite Defendant's statements to the contrary, there is no evidence that the United States law enforcement agents were armed during the interviews. It would be extremely dangerous for law enforcement agents to place a weapon within reach of an un-handcuffed person suspected of murder in a police station. Additionally, following the conclusion of the second interview Defendant made repeated phone calls to SA Ramirez expressing his desire to continue to cooperate with the investigation. These are not the actions of an individual who has been subject to coercion, intimidation or threats. There was no intimidation present during the interviews, and Defendant's free will was not overborne by the factors he argues in his motion. Accordingly, based on the totality of circumstances, the Court finds that the Government has met its burden of proof, by a preponderance of evidence, that Defendant was not subject to coercion, intimidation or threats; therefore, his statements were voluntary.

### 2. Knowing and Intelligent Element of *Miranda* Waiver

■ To determine whether a defendant made a knowing and intelligent waiver of *Miranda* rights, the court must examine " 'the suspect's intelligence and education, age and familiarity with the criminal justice system, [and] the proximity of the waiver to the giving of *Miranda* warnings.' " *Correll v. Thompson,* 63 F.3d 1279, 1288 (4th Cir.1995) (citation omitted).

■ The facts and circumstances surrounding the interviews on June 25, 2013 and June 27, 2013 show that before any questioning commenced, Spanish speaking United States law enforcement agents advised Defendant, a former Colombian police officer, of his rights using a form written in Spanish. Defendant reviewed this form in the agents' presence. After his *Miranda* rights were read to him Defendant stated, orally and in writing, that he wished to waive his *Miranda* rights and proceed with the interviews. In light of Defendant's familiarity with the criminal justice system as a Colombian police officer, the Court finds Defendant's testimony

that he did not read the form advising him of his rights before signing it is not credible. Accordingly, the Court finds that the Government has established, by a preponderance of evidence, that Defendant made a voluntary, knowing and intelligent waiver of his *Miranda* rights. Therefore, Defendant's Motion to Suppress is DENIED, and Defendant's post-arrest statements are admissible.

## B. Recording of Statements

■ Defendant argues that his pre-arrest and post-arrest statements should be suppressed because the United States law enforcement agents failed to make a contemporaneous video or tape recording of Defendant's statements (Doc. 107). Defendant suggests that the agents intentionally turned off the recording equipment prior to the interview. *Id.* In support of his argument, Defendant relies almost exclusively on the case, *United States v. Elliott*, 83 F.Supp.2d 637 (E.D.Va.1999). In *Elliott*, the court found a violation of the defendant's due process rights through application of the principles set forth in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) regarding the destruction of evidence. The DEA received notification of the arrest of Elliott, who was suspected of the manufacture of methamphetamine, after a traffic stop in a vehicle that contained laboratory glassware, tubing, chemicals, plastic gloves, and filters. *Elliott*, 83 F.Supp.2d at 640. The DEA agent, who saw the residue of an unidentified substance on the glassware, had the seized evidence tested for fingerprints and then destroyed. *Id.* Applying *Trombetta*, the court ruled that the destruction of the evidence was done in bad faith, since "any reasonable enforcement agent" would recognize its potentially exculpatory value, including the possibility that testing could show that the residue on the glassware was not methamphet-

amine or its chemical constituents. *Id.* at 643. As a result, the court suppressed the use of the fingerprint evidence at trial. *Id.* at 649.

The *Elliott* case stands for the proposition that the police may not destroy existing physical evidence in bad faith. Contrary to Defendant's assertion, it does not stand for the proposition that there is a constitutional requirement that custodial suspect interviews are required to be recorded. Defendant acknowledges that the First Circuit in *United States v. Torres–Galindo*, 206 F.3d 136 (1st Cir.2000) found no merit to defendant's claim that his Fifth Amendment rights were violated by law enforcement's practice of not recording suspect confessions. The First Circuit's stance on this issue is not isolated. *See Trice v. Ward*, 196 F.3d 1151, 1170 (10th Cir.1999) (no Supreme Court precedent or any other court precedent to support defendant's argument that police were required to electronically record entire interrogation); *Ridgley v. Pugh*, 176 F.3d 484 (9th Cir.1999) (habeas claim based on police officer's failure to tape-record a portion of petitioner's interrogation "does not state a violation of a federal constitutional or statutory right"); *United States v. Yunis*, 859 F.2d 953, 961 (D.C.Cir.1988) (finding "no constitutional requirement to record confessions by any particular means," including videotaping, even if such equipment is available).

Defendant has, therefore, failed to establish that his constitutional rights were violated due to the United States law enforcement agents' failure to contemporaneously video or tape record his pre-arrest and post-arrest statements. Accordingly, Defendant's Motion to Suppress his pre-arrest and post-arrest statements is DENIED.

488

## V. Conclusion

The Court denies Defendant's Motion to Suppress because the Government has demonstrated, by a preponderance of evidence, that Defendant's post-arrest statements were made voluntarily, after a knowing and intelligent waiver of his *Miranda* rights. Additionally, Defendant's constitutional rights were not violated when the United States law enforcement agents failed to make a contemporaneous recording of his pre-arrest and post-arrest statements because a video or tape recording of Defendant's interrogation and statements is not constitutionally required.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (Doc. 106) is **DENIED**.

**IT IS SO ORDERED.**